# SUPPLEMENT.

JOHN FLINT vs. THE NORWICH AND NEW YORK TRANSPORTA-
TION COMPANY.

[United States Circuit Court, District of Connecticut, April Term, 1868.]

Carriers of passengers for .hire are bound to. exercise the utmost vigilance and
care in maintaining order and guarding those they transport against violence
from whatever source arising, which might be reasonably anticipated, or natu-
rally expected to occur, in view of all the circumstances, and of the number and
character of the persons on board.

Under this rule, the carrier is bound to protect one passenger from the violence of
another.

In a suit by a civilian passenger for damages for injuries inflicted on him by the
discharge of a musket dropped on the deck of a passenger steamer by one soldier
engaged in a struggle with another soldier, the defendant is not excused by
showing that he was compelled by the government to receive the soldiers on
board and that they were in charge of officers; clearly not where he afterwards
voluntarily received the plaintiff on board as a passenger without notice to him
of the enforced presence of the soldiers.

ACTION on the case for an injury to the plaintiff, a passen-
ger on a steamboat of the defendants, through the negli-
gence of the defendants; tried to the jury before *Shipman, J.*
The case is sufficiently stated in the charge of the judge to
the jury.

*L. Child* and *R. H. Dana* of Boston, and *S. E. Baldwin* of
New Haven, for the plaintiff.

*L. F. S. Foster* and *J. Halsey* of Norwich, and *J. S. Beach*
of New Haven, for the defendants.

JUDGE SHIPMAN charged the jury as follows:

*Gentlemen of the Jury.*:—There are a number of facts touching this interesting and important case which is now finally to be submitted to you, about which there is no serious dispute. The plaintiff, Dr. John Flint, a physician residing in Boston, left his home for New York on the 6th of June, 1864. Before leaving he purchased a through ticket, called a coupon ticket, by which he became entitled to a passage from Boston to Worcester over the Boston and Worcester railroad, from Worcester to Norwich over the Norwich and Worcester railroad, from Norwich to New London over the Northern railroad, and from New London to New York through the Sound, on one of the defendants' passenger boats. He passed safely over the route from Boston to New London, where he arrived not far from half-past ten or eleven o'clock in the evening, and left the cars and proceeded on board the defendants' boat, the steamer City of Boston, which was then lying at the dock, with steam up, ready to start as soon as the passengers by the train with their luggage and some express freight were taken on board. The plaintiff, with other passengers, one of whom was a lady under his charge, passed on to the main deck of the steamer through her after starboard gangway. He proceeded with the lady through or along with a crowd of passengers, passed up the stairs to the upper saloon, and leaving the lady, after some little time, returned to the main deck and went to the ticket office to receive his state-room key, to which his ticket entitled him. He obtained the key and was returning from the ticket office to the upper saloon by the proper route, when, a short distance from the ticket office, just before he reached the stairs, a loaded musket fell from the hands of a soldier or non-commissioned officer, or was thrown down, and was discharged as it fell, the ball passing through the foot of the plaintiff just back of the toes, shattering the bones and causing a dangerous wound, from which he suffered severely for a long time, and finally, to save his life, as advised by his surgeons, he was compelled to have his foot amputated. He suffered for a period of nearly three

months and incurred expenses in a city distant from his home. His activity and capacity for business and professional usefulness have been more or less permanently impaired.

He claims that this injury, with all its serious consequences, was the result of a breach of duty on the part of these defendants, and to recover proper damages therefor he has brought this suit. The burden of proof is on the plaintiff, and it is now for you to say whether or not, on the whole evidence, the claim of the plaintiff is well founded. The rules of law, which you are to apply as tests to this evidence, I will refer to particularly hereafter.

As I have already stated, before the arrival of the train which brought the plaintiff to New London, the steamboat was at the dock, with steam up ready to start when the passengers and the baggage and express freight from the train were all on board. She had been lying there for some time. Between nine and ten o'clock, an hour or more before the train arrived, a detachment of United States soldiers from Fort Trumbull, about sixty-three in number, with several non-commissioned and two commissioned officers, went on board and were there when the train arrived. Fourteen or more of these soldiers were armed with muskets, loaded and capped, and furnished with bayonets. They were detailed as guard over the rest, who were unarmed. Witnesses called by the defence state that this detachment was placed on the main deck, forward of the engine room, and armed sentries stationed to keep them there; that a sentry was placed each side of the engine room to prevent them from going aft, two at the forward starboard gangway, and one at the head of the stairway leading from the forward part of the main deck to the cabin below, and some of the witnesses say that a sentinel was also placed at each of the two ladders which led from the forward part of the main deck to the saloon deck above. This was substantially the condition of things on this boat down to, or near to, the time when the train which brought the plaintiff arrived.

On this train came a large number of passengers, among whom were about one hundred and fifty soldiers in a detach-

ment, under the command of officers, who were ultimately marched on board at the forward gangway.

By the same train came also about a dozen or twenty soldiers, apparently travelling as ordinary passengers. These also went on board, whether by the forward or after gangway may be proper for you to consider in deciding upon the conflicting evidence touching the condition of things on the after part of the deck, at the time the passengers were coming on board there and getting their tickets and state-room keys.

The train having arrived, the plaintiff proceeded on board by the proper entrance. Here the duty of the defendants towards him as a passenger commenced. They undertook to transport him for hire, and were bound to secure him a safe passage so far as that could be done by the exercise of due care on their part. This was a duty imposed upon them by their contract and by law. The precise rule of duty to which they are to be held and which you are to apply to the evidence in deciding whether or not they are liable in this action, is this: The defendants were bound to exercise the utmost vigilance and care in maintaining order and guarding the passengers against violence from whatever source arising, which might reasonably be anticipated or naturally be expected to occur in view of all the circumstances, and of the number and character of the persons on board.

Now the plaintiff has testified, and has called a number of witnesses who, he claims, substantially concur to the same points, that immediately upon stepping upon the boat he found himself in a dense crowd of persons, many of whom, like himself, were civilian passengers from the train, but among whom were a number of soldiers, some of them armed, who were boisterous, some evidently intoxicated, quarrelsome, profane, and exhibiting more or less disposition to rudeness and violence by scuffling and jostling one another and the civilians. The plaintiff claims that the evidence touching this part of the case, proves that this disorder and uproar continued from fifteen minutes to half an hour, until he returned from the upper saloon after his key, and until the discharge of the gun by which he was wounded; and that during all this time no

efforts were made by the servants of the defendants to quell this disturbance, and that it finally terminated in this injury to him.  Now if all these facts are, in your judgment, substantially proven, you will have a right to infer negligence on the part of the defendants and hold them liable.  If men armed with loaded muskets were in this space through which the passengers had to pass, it was the duty of the defendants to see that they were removed before the passengers came on board, or that the latter were notified of the danger or adequate protection furnished.  If armed and boisterous quarrelsome soldiers rushed into this space after the passengers had begun to come on board, and produced and continued an uproar there, it was the duty of the defendants, through the officers and hands of their boat, to make every effort to quell the disturbance and protect their passengers from violence and danger, and to call upon the military officers to enforce discipline.

But the defendants give a very different version of the events of that night.  They claim to have proved by their witnesses that the space where the passengers from the train came on board was clear, at least of soldiers, when they arrived ; that there were no soldiers or soldier, armed or unarmed, upon this part of the boat at that time, and that if any soldiers came in with or among the passengers, as they were pressing on to the boat, they were few in number, unarmed, were travelling as ordinary passengers, and behaved as peaceably as the civilians.

They further claim that they have shown by their witnesses that, soon after the passengers got on board, one of the unarmed recruits from Fort Trumbull undertook to pass the sentry on the port side of the engine room and was repulsed, that he repeated the attempt and again failed, and that he finally returned with several of his companions, and overpowered the sentinel, when he or they rushed aft near to or into the space where the passengers came on board, that several of the guard followed, when a scuffle ensued near the saloon stairs between the insubordinate recruit or recruits and the pursuing guard, and that it was in their brief, as they

claim momentary, struggle that the gun was snapped or thrown down by which the plaintiff was shot.

Now it is for you to say which of these two versions is correct. As I have already said, if disorderly soldiers armed with loaded muskets occupied the space where the passengers came on deck, and no notice was given to the passengers of that fact that they might avoid the danger, or if such soldiers rushed on to that space while the other passengers were coming on board and securing their keys or tickets, and conducted in a quarrelsome and disorderly manner for a considerable time, during which the plaintiff was shot, without any effort on the part of the defendants' officers or crew to suppress the disorder and protect the passengers, or induce the military officers to do so, and the plaintiff was injured in consequence, then you have a right to hold the defendants liable. If, on the other hand, the version given by the defendants' witnesses is the true one, then you will proceed to another inquiry, and that is whether in this aspect of the case the defendants did exercise their utmost vigilance and care in maintaining order and guarding the passengers against violence from whatever source arising, which might reasonably be expected to occur in view of all the circumstances and the number and character of the persons on board. If they did this, or if it was done by the military, the defendants are not liable. If such vigilance and care were not exercised, and the plaintiff was injured in consequence, then the defendants are liable, and your verdict must be for the plaintiff.

And here it is proper that I should notice a circumstance set up by the defendants. They say they had no alternative but to take these soldiers from Fort Trumbull, who caused, as they assert, this disturbance and this injury to the plaintiff; that they were compelled to take them on this boat by military coercion. You may assume that fact as proved, but this will not vary the liability of the defendants under the present circumstances. They took the plaintiff as a passenger voluntarily, after this detachment was on board, and without notice to him, and their obligations to him were just the same whether they had taken the Fort Trumbull troops voluntarily or

under compulsion. They were on board long before he was, the defendants knew the fact, no notice was given to the plaintiff, and they were bound to take such precautions for the protection of their civilian passengers as was demanded by the rule I have laid down. They say that they did, or saw that it was done, and that the armed sentinels stationed at the points stated by the witnesses to keep the soldiers in their proper place was all that the highest vigilance and prudence required. The guard was not under their command, and the only apparent additional precautions which the defendants could have taken that occur to me (you will say whether they could have taken others) would have been to apply to the military officers to have the sentries increased, or to have placed men, officers of the boat or hands, under their own control, at the passages to support the armed sentry in case of difficulty, and to act as an additional guard and to quell any violence that might occur, as a more secure protection to the passengers. I do not say this was, or was not, their duty. It is for you to determine. It is exclusively for you to say what their duty was; whether the condition of things on board the boat before the train arrived required them, in anticipation of its arrival, to take these or any other precautions beyond what were taken, and consequently whether their neglect to do so was an omission of their duty and a neglect of their legal obligations as I have laid them down. If the defendants discharged their duty within the rule I have submitted to you, your verdict must be for them. If they failed to do so, and the injury to the plaintiff is fairly attributable to that failure, then your verdict must be for the plaintiff.

If you find for the plaintiff, you will assess the damages at such a sum as will in your judgment compensate him for the necessary expenses he has actually incurred in his sickness and cure and in providing himself with artificial limbs, for the loss of time and income from his profession during his illness, for the permanent injury inflicted upon him, and, so far as money can compensate him, for the pain he has suffered.

You will give the whole evidence a careful consideration, apply to it the rules of law as I have laid them down, and return such a verdict as your judgment may dictate.

The jury returned a verdict for the plaintiff for ten thousand dollars damages.