By the Court.—Van Vorst, J.
A common carrier of passengers is not liable for their safety to the same extent that he is for the safety of merchandise. He is not bound absolutely in every event, and under all circumstances, to insure the safety of his passengers.
But he is liable for injuries sustained by them through his own negligence, or that of his agents and servants.
The duty of the carrier is not only to guard each passenger from violence and assaults of its own agents and employes, but from the assaults and violence of other passengers carried in the same conveyance, and from other causes of discomfort or injury, which could have been reasonably anticipated and prevented (Sherby v. Billings, 8 Bush [Ky. R.] 147; Goddard v. The Grand Trunk Railway, 57 Maine R. 202 [2 Amer. Rep. 39.]; Flint v. The Norwich & New York Transportation Co., *200 34 Conn. 554; Pittsburg, Fort Wayne & Chicago R. R. Co. v. Hind, 7 Amer. Law Reg. 14 [N. S.] ).
The law demands of the carrier of passengers, the utmost skill and care which prudent men are accustomed to use under similar circumstances to secure the comfort and safety of their passengers, and the absence of such skill and care is negligence.
Nor will such care and skill be deemed unreasonable when it is considered that human safety is concerned.
Such being the measure of responsibility, carriers of passengers are required to have servants and agents in their service, competent, skilled, and experienced for their several employments. In no other way can they meet their responsibilities (2 Parsons on Contracts, 5th edition, vol. 2, p. 228).
At the time Putnam received the blows from Foster, which caused his death, the relation of pássenger and carrier between himself and defendant had not, as was urged by defendant’s counsel on the trial, ended.
The place, Forty-sixth street, had been reached, at which he had directed the conductor to stop for the discharge of himself and two females, a mother and young daughter, who were in his charge. The daughter had alighted, leaving her mother still in the car, but following her, and Putnam was standing with one foot on the ground, and the other on the step of the rear platform, his hand on the railing, in the act of aiding the mother to alight, when he was struck down in the presence of the conductor.
A passenger should have a reasonable time in which to leave the car, at the end of his route, with those in his charge.
In Brien v. Bennett (8 Cass. & P. 724), it was held that the relation of carrier and passenger was commenced when the plaintiff was putting his foot on the step of an omnibus which, had stopped on his signal, when he was injured by the act of the driver in going abruptly on. *201 Much more would the relation once began, be not yet-ended, when a passenger in the act of alighting had but one foot on the ground.
The question presents itself, whether the defendants omitted any duties arising from the obligations which they had assumed with regard to the safety of Putnam, while he remained a passenger, or whether they were guilty of any negligence which contributed to his death.
Foster, when he was accepted as a passenger, was in a condition of gross intoxication. It appears that the car did not stop to receive him, but that he jumped on the front platform at Sixteenth Street, whilst it was in motion, and with a force so potent as to shake the car. He took his position near the driver, standing on the platform by his side. As he was in a condition of intoxication, he could have been refused as a passenger, and removed from the car. But the conductor, by after-wards receiving his fare, waived the manner of his intoxication upon the car, and accepted him as a passenger.
His rude and disorderly conduct, to be expected from his state of intoxication, commenced whilst he was standing by the side of the driver, when the car reached Twenty-ninth Street, and was of a nature to have called for his immediate ej ection. He grossly insulted by looks, acts, and speech, the mother and daughter under Putnam’s charge.
He violently, forcibly, and noisily opened and insisted on keeping open the front doer, which had been closed for the comfort of the passengers, it being in the night, and he remaining outside on the platform,' within a few feet of Putnam and the two females, one of whom was ill. Finally, entering the car, he seated himself near Putnam, with his body stretched upon the cushions, and Ms feet extended towards him. He offensively indulged in muttering speeches and fierce gesticulations, and finally uttered a distinct threat of injury to him, before Putnam should leave the car.
*202 Whether the driver or conductor heard this specific threat, does not affirmatively appear.
But they were spoken in a tone of voice sufficiently loud to be heard by Mrs. Duval and her daughter, who were sitting on the opposite side of the car.
It was not necessary to have insured prompt action for his expulsion, that the driver and conductor should have heard this threat. Sufficient had before occurred within their sight and héaring to have demanded decided action. His intoxication, his insulting, disorderly, and menacing conduct, had called for his removal from the presence of passengers, whose comfort and safety were in jeopardy so long as he remained.
Beyond controversy, the defendant’s agents in the' car, had they been so disposed, had the right to have expelled him so soon as his condition was known or his disorderly conduct manifested.
This right to remove disorderly persons is an incident to the defendant’s proprietorship of the car, the business they were conducting, and the responsibility they were under for the safety of other passengers (People v. Cargl, 3 Parker, C. R. 326 ; Redfield on the law of Railroads vol. 2, p. 273, paragraph 5; fourth edition; Vinton v. Middlesex, Railroad Co., 11 Allen, 306).
The existence of this right of expulsion, and their obligations to the other passengers imposed upon the defendants the duty to expel. Under such conditions, the right and duty are correlative.
When a right is conferred, a relative duty is also imposed upon the party obliged. Putnam, as a passenger, had absolute right to protection against insult and inj ary from passengers admitted and tolerated by the defendants in their car.
And if such protection demanded, as it assuredly did, the expulsion of Foster, it was the duty of the defendants to have removed him promptly.
Their omission to do so was a culpable breach of a *203 positive duty. It was negligence, and for its legal consequences the defendants are liable.
It can scarcely be questioned, upon principle or authority, that had Foster, at Forty-sixth Street, before leaving the car, inflicted the injury on Putnam, that the defendants would have been held responsible, as the consequences of their breach of duty and negligence. But the learned counsel for the defendant claimed on the trial, and in his argument on the appeal, that Foster, when he committed the injury, had also ceased to be a passenger, and that defendants were not liable for his acts committed thereafter.
But Putnam, as has already been observed, was still a passenger, and for his safety from injury, which, by the performance of their duty, the defendant could have secured, or for any damage to him, the result of their negligence, they were still liable.
Had Foster, instead of being carried by'defendants, under the circumstances of this case, casually or by design been at the spot without the defendants’ agency, and, under the,influence of passion, struck Putnam, no negligence or want of care being imputable to defendants, it might reasonably be urged that no liability would rest upon them.
It does not appear from the evidence that Foster had indicated either to the conductor or driver at what particular point he wished to stop. It may be inferred from his conduct, speech, and menace to Putnam at or about Twenty-ninth Street, that he had no specific objective point of* departure, but that he had determined in his mind to remain in the car and be carried at least as far as Putnam, and inflict upon him the injury which he had openly threatened before he should leave, or whilst in the act of leaving.
To the extent of carrying Foster, and enabling him to be in readiness to inflict the injury at the precise time Putnam should attempt to leave the car, the defendant *204 aided the felon in his purpose. His prompt expulsion, on his first exhibition of rude behavior, would have' foiled his purpose and prevented the homicide.
If or does it appear that, when he left the front platform at Forty-sixth Street, and ran hurriedly along the side of the car to the rear to attack Putnam, he had finally terminated his relation as a passenger, ©r had indicated his intention then to do so. The end of the railroad route had not yet been reached, and his fare through had been paid. There is no evidence that he did not return. If he did not, however, the view is confirmed that he was travelling only to find a fitting moment to do effectually his work, or it may be that, having accomplished it, he feared to return and sought to escape. If instead of being under the influence of intoxicating drink, 'and rendered thereby rude, disorderly, and threatening, Foster had been a raving maniac unbound, voluntarily carried by the defendant, who, leaving the the car suddenly at some stoppage, and moved by some fancied wrong, attacked and severely wounded a passenger while in the act of leaving, it would seem that the defendant’s negligence in carrying a person in such condition would be a breach of duty to the other passengers, and render them liable for the injury. The learned counsel for the defendant earnestly contends that the death of Putnam was not the legal and natural consequence of the negligence imputed to the defendants.
The learned judge before whom the trial was had, in his charge to the jury, said: “The plaintiff, in order to maintain this action, is bound to show that the death of her husband was caused solely by some wrongful act, neglect or default of the defendants’ servants or agents ; ” and further: “If you come to the conclusion that there was negligence on the part of the defendants in not excluding this man, or in suffering this occurrence to transpire, and that this blow was a consequence or result of such neglect on the part of the defendants' or their *205 servants, then it is for you to consider the amount of x damages, after satisfying yourselves that this injury, "by which the "deceased lost his life, was the result of negligence on the part of the defendants.”
The jury found a verdict for the plaintiff of five thousand dollars. We see no error in the charge of the judge ; no exception was taken, and the verdict of the jury establishes, and, as we think, correctly, both the negligence of the defendants and the killing of Putnam as its consequence.
The failure to remove Foster was not only a breach of duty on the defendants’ part to protect the passengers from the rudeness and violence of Foster, but was in itself a wrong,—a wrong to some extent aggravated by the fact that Foster stood on the front platform by the driver, and much of his disorderly conduct was committed in his presence without reproof or interference. The conductor, who was in sight, did nothing except on one occasion to say to Foster, “Sit down and be quiet.”
Heither of these men have been called as witnesses to give any account of the transaction, or any explanation or exculpation of their conduct, or failure to act promptly and efficiently in the premises.
The presumption is that no satisfactory excuse or reason in their justification, or even in palliation, could be offered.
In order to render the defendants liable for the death of Putnam, it is not necessary that their servants and agents should have either intended or expected that it would result from their failure to expel Foster, or that such result would be either the necessary or natural consequence of their negligence.
In Vandenburgh v. Truax (4 Denio, 467), Brown, C. J. says: “The injury which the plaintiff sustained was not the necessary consequence of the wrong done by the defendant, nor was it so in the case of the lighted *206 squib in Scott v. Shepherd (2 W. Blade. 892). But in both instances the wrong was of such a nature, that it might very naturally result in an injury to some third person. It is true that the boy might have gone elsewhere instead of entering the plaintiff’s store, and it is equally true that Willis and Regall might have thrown the squib out of the market-house, which was open at both sides and at one end, instead of tossing it across the market-house among the people then assembled, and finally the proximate cause of the injury was in both cases an intelligent agent.”
In Leame v. Bray (3 East. Rep. 595), Lord Ellen-borough said: “ If I put in motion a dangerous thing, or if I let loose a dangerous animal, and leave to hazard what may happen, and mischief ensue, I am answerable in trespass, and if we put an animal or carriage in motion, which causes an immediate injury to another, he is the actor, the causa causans.” See also Gruille v. Swan (19 John R. 382).
It is true that the injuries in the cases "last above cited, were the consequence of positive acts wrongfully or negligently done, but the rule as to the sequence of damage in such cases is the same as when the injury is the result of an omission to perform a positive duty. The. condition and conduct of Foster was such as would naturally, and according to the usual course of things, lead to further disorder, violence, or injury. His reason and judgment were disordered, and his passions aroused. Such conditions, according to human experience and observation, naturally lead to injurious consequences.
All that is necessary is, that the negligence and injury is concatenated as cause and effect to support the action, and that has been found by the jury to exist in this action.
The primary cause of the plaintiff’s injury in the loss of her husband, may be directly traced to the defendants themselves who entrusted the conduct of their business *207 and the safety of their passengers to persons incompetent for the service, or regardless of their duty ; persons who were apparently indifferent alike to Foster’s disorderly conduct and Putnam’s safety, and who, either unmindful, or not properly considering the consequences, negligently failed to discharge a duty which, if performed, would doubtless have obviated the evil and prevented the homicide.
A careful examination of the case fails to disclose any error in the rulings and decisions of the judge on the trial, and the judgment appealed from should be affirmed with costs.
Monell, J., concurred.