Thomson, J.,
delivered the opinion of the court.
The facts of this case are as follows: On the evening of March 18, 1889, the plaintiff below, Samuel B. Wright, purchased a first-class passenger ticket from the agent of the defendant company, entitling him to transportation by defendant, as its passenger, from Denver to Roggen, a station on its railroad. About five minutes before the time when defendant’s train was scheduled to leave, he started for the train which consisted of an engine, a baggage car, a smoking car, a chair ear and a Pullman sleeping car. The train was ready to receive passengers. Plaintiff having reached the train ascended the forward steps of the chair car, and undertook to enter the car. Preceding him, three men ascended the rear steps of the smoking car and went upon its platform. The rear platform of the smoking car and the front *104 platform of the chair car joined. As plaintiff was stepping upon the platform of the chair car, one of these men ran against him and he stopped. The men were crossing from the smoking to the chair car at the time, and entered the latter car. Plaintiff then went through the door into the entrance or vestibule of the chair car, on one side of which was a water-closet, and on the other a washstand. As soon as he had passed through the door, one of the men who was standing about four feet inside the car, backed up against him, striking him in the stomach, and crowded him into the corner made by the washstand and door facing. The other two then rushed upon him, and the three united in jamming him into the corner. Plaintiff having relieved one of his arms, discovered that his pocket book, containing some money and papers which he had placed in an inside pocket of his coat, was gone; and seizing one of the assailants and moving him into the car door, he accused him of taking the pocket book. One of the men suggested that he might have dropped it, and, with the others, apparently commenced a search for it. It was found upon the floor some little distance from where the plaintiff had been. One of the assailants had something in his right hand, which plaintiff thought was a revolver. After he had recovered his pocket book the altercation was renewed. He told one of the men that he wanted him, and ordered him to stand. He had retreated into the corner, and two of the men again rushed upon him. He grasped them, and the third^struck him upon the head three times with great violence, cutting the scalp, rendering him unconscious, and inflicting upon him serious wounds, from the effects of which he has suffered permanent injury.
At the time plaintiff missed his pocket book, and charged one of his assailants with taking it, he called loudly for help, saying that he was being robbed. He called again when he had recovered his pocket book. His calls could have been heard at some distance from the place where he was standing. The crew of the train consisted of an engineer, fireman, conductor, brakeman, messenger, porter, and Pullman *105 car conductor and porter. None of the train men came to plaintiff’s' assistance.
This action was brought to recover from the railroad company the damages sustained in consequence of the assault, on the ground of the failure of the company to protect the plaintiff against the violence which he suffered. There is no controversy over the facts. The questions to be determined -arise upon instructions given and refused, and are therefore purely of law.
Although the doctrine is of comparatively recent growth, it is now firmly established that a carrier of passengers must exercise the same degree of care to protect them from violence from their fellow passengers, or from intruders, that is required for the prevention of casualties in the management and operation of its trains. While carriers are not insurers of the safety of passengers, as they are of freight committed to them for shipment, still they are held to the utmost care, vigilance and precaution to guard against accident, consistent with the mode of conveyance, and with its practical operation ; and no distinction is made between casualties resulting from the negligent equipment or operation of their trains, and those arising from the misconduct of passengers upon them. P., Ft. W. C. R. R. Co. v. Hines, 53 Pa. St. 512; Flint v. N. & N. Y. Trans. Co., 34 Conn. 554; Britton v. A. & C. T. Co., 88 N. C. 536; King v. O. & M. R. Co., 24 Fed. Rep. 413; P. & C. R. R. Co. v. Pillow, 76 Pa. St. 510; Mullen v. Wis. Cent. Co., 46 Minn. 475; N. O. & C. R. R. Co. v. Burke, 53 Miss. 200; Weeks v. N. Y. & C. R. R. Co., 72 N. Y. 50; C. & A. R. R. Co. v. Pillsbury, 123 Ill. 9.
In all the cases coming under our observation, in which this question has been the subject of adjudication, the agents and servants of the carrier, either knew of the actual existence of a disturbance, and made no attempt to quell it, or had knowledge of the presence, on board, of disorderly or dangerous persons, from whose language or actions there was reasonable ground to apprehend danger, and failed to take any precaution to avert it. As the safety of passengers is *106 not warranted, and the ground of the carrier’s responsibility for injuries received, is negligence or want of that care which the law requires, knowledge of the existence of the danger, or of facts or circumstances from which danger may be reasonably anticipated^ seems to be necessary to fix a liability upon the carrier for damages sustained in consequence of failure to guard against it. The utmost diligence and care is required, and the slightest negligence against which, human prudence or foresight 'may guard, will render the carrier responsible for consequent injury; but it is not accountable for something which is not known, or in the nature of things cannot be foreseen. The rule laid down by Judge Shipman, in his charge to the jury, in Flint v. N. & N. Y. Trans. Co., supra, and which has been recognized in subsequent cases as correct, is as follows:—
“ The defendants were bound to exercise the utmost vigilance and care in maintaining order and guarding the passengers against violence from whatever source arising, which might reasonably be anticipated or naturally be expected to occur in view of all the circumstances, and of the number and character of the persons on board.”
In this case there is nothing in the record to indicate that the assault upon the plaintiff could have been anticipated, or could possibly have been foreseen; so that the defendant incurred no responsibility for failing to guard against it. Whether it was known while in progress is another question. If the cry for help was loud enough to be heard by the agents or employees of the defendant attached to the train, supposing each of them to be at his post of duty on or near the train, they will be presumed to have heard it. . The vigilance which is exacted of them requires them to be alert, and to keep their ejres and ears open; and, whether they heard the call or not, if it was loud enough to reach them they should have heard it, and so should have responded at once by going to plaintiff’s assistance. They will be held to have known what they ought to have known.
The plaintiff requested several instructions, which are *107 faulty, in inferentially assuming facts which it was the province of the jury to determine. Whether the cry for help was loud enough to be heard by the train men, or some of them, wherever they were, provided they were in their proper places ; and whether it was the duty of the defendant to have any of its employees stationed in the car where the assault was made, were questions to be submitted to the jury. We do not see that the court erred in refusing these requests.
The court gave the jury the following among other instructions :—
“ II. It was not the duty of the defendant company to furnish its trains while standing ready to receive passengers at the depot, with a police force which would be adequate to meet sudden and extraordinary emergencies — such emergencies as could not have reasonably been foreseen or anticipated. All it was bound to do with regard to furnishing men for the train, was to have a sufficient number whether of train men or policemen, or other employees at the depot, with qualifications to perform the necessary duties on or about the train, to meet the ordinary demands while passengers were waiting and taking seats in the passenger train, and to furnish ready help sufficient to protect the passengers from any attack which might reasonably be expected to occur.”
“ III. The plaintiff when he purchased his ticket for the journey he proposed to take, had a right to suppose that the train was furnished with the proper hands for the conduct of the train, but not with a police force to protect him from the violence of highwaymen who might have been quietly lurking about the train, and from whom violence could not reasonably have been expected. It was the duty, however, of the company to have about its trains a sufficient number of men, so that while the conductor and brakemen or other employees, were away temporarily, attending to their respective duties, there would be some one near the train clothed with authority to do what ordinarily might become necessary to meet the ordinary wants of the passengers while they are going to and were taking seats in the cars of the train. If a *108 requisite number were employed on this train, and they were momentarily absent from that part of the train where the assault was made upon the plaintiff, and at the time there was nothing from which the assault in question could have been anticipated, then the defendant is not liable in this action.”
“ IV. If, however, the company did not furnish enough men to meet the ordinary demands of the train, as I have explained, then the presumption of negligence on the part of the defendant would arise. As I said before, gentlemen, these are questions which it is your duty under the evidence that has been introduced, and the instructions of 'the court, to determine.”
"V. If the defendant fails to furnish a sufficient number of men to attend to the ordinary duties which might arise, or might be expected to arise, while passengers were getting on the train and taking seats, and for the general control and care of the train, and necessary to guard the wants and necessities of the passengers as they were going to the train, then as I said before, the presumption of negligence arises. If you find otherwise, that there were a sufficient number of employees there at that time, to meet the wants as I have explained, then the defendant is not liable.”
These instructions are essentially erroneous, in that they substantially declare that if the defendant furnished a sufficient number of men in and about the train, to meet the ordinary wants and demands of passengers while going to and taking seats in the cars of the train, and to protect the passengers from any attack which might reasonably be expected to occur, it performed its full duty, and was entitled to a verdict. Now, it is immaterial how many men the defendant furnished to attend to passengers and look after the train, if the men so furnished neglected their duties. The defendant is responsible for the wrongful or negligent acts and omissions of its servants and agents without regard to their number. There might have been an army there; but if, while the plaintiff was being attacked with their knowledge, they failed or refused to come to his relief, the defendant is charge *109 able with their neglect. It of course devolved upon the defendant to man its train with a sufficient force, and the instructions in that particular correctly declare the law, but the mere fact that it furnished men in plenty is no defense.
An important question in the case is whether the men who were furnished, performed their duty to the plaintiff; or whether through their negligence he suffered harm, and that question was ignored by the court in all of its instructions. For this error the judgment must be reversed.

jReversed.