FRITZ v. SOUTHERN RAILWAY COMPANY.

(Filed May 13, 1902.)

1. EVIDENCE—*Sufficiency—Negligence—Personal Injuries.*

There is no evidence in this case showing negligence on the part of the defendant for personal injuries to plaintiff.

2. APPEAL—*Exceptions and Objections—Nonsuit.*

A defendant whose motion for a nonsuit is overruled, who does not appeal, is not entitled to the benefit of such motion on appeal by plaintiff.

ACTION by Bertha Fritz against the Southern Railway Company, heard by Judge *Thos. J. Shaw* and a jury, at September Term, 1901, of the Superior Court of GUILFORD County.

CASE ON APPEAL.

"Bertha Fritz, the plaintiff, was introduced and testified in her own behalf as follows:

"I live in High Point. On the 12th of August, 1899, I

went to Thomasville and returned that night. Left Thomasville at night, after 9 o'clock. Bought a ticket before leaving, and boarded the train for High Point. Reached High Point between 9 and 10 o'clock. Occupied first-class car, rear end. When train reached High Point and stopped, I left the car, following the conductor and other passengers through second-class car, and was going down steps and the man hit me as I was going down steps, on right side. A number of passengers, eight or ten, passed out this way ahead of me and behind the conductor. The man had a valise. A large black valise. Old style, not like new ones. He had it in his left hand. I passed down right hand of steps and he came up on left of same steps. I was on second step and taking step to last. I was standing on my right foot. He was a large man; I did not know him. It was the metal part of the valise next to me that struck me. He was carrying it in his hand by the handle. The valise struck me on lower part of left knee, just below the cap, a little to one side. Struck me with some force, and caused pain at the time. He was passing me rapidly. He had grabbed the rail and lifted himself up. Don't know how wide the steps are. (Shows about how wide the space.) I could not walk without pain then from the very beginning. He struck me and passed on by and left me on the steps. Grasped the car to steady myself, and then went on down third step to ground. Usual step. Quite a long step down.

"The conductor was standing in front of the steps. Looking over his shoulder. Looking back. Had turned and was looking at a crowd of young ladies. I saw him as I started down, and he was looking up at me, or up that way, and at the time I was hurt he was looking back. Large crowd young ladies. (Mr. Royal was conductor. Admitted by defendant.)

"The conductor said nothing when I stepped to the ground.

The force with which I was struck was severe. The valise felt heavy. It was a large valise. I made some noise, and the conductor looked up, and when I got to the ground met my father, and he took me by the arm and led me through the crowd, and I went to a drug-store.

"The injury was painful. I then had pain. I limped, and pain increased after I got to drug-store. Remained at drug-store one-half hour. Don't know how far to drug-store. I told my father first at depot I was hurt. I said: "I am hurt," and he said, "Not much." I told him I did not believe I could walk home, and he carried me to a drug-store, and when he came back I told him again I was hurt. He was gone 20 minutes, and we remained at drug-store 10 minutes and then went home. We live quite a little distance from the drug-store. As far as the depot from here. I walked home with his help. Hurt to walk. On reaching home, I examined the knee and applied liniment. Found a very small blue spot, size half dollar next morning. Did not rest very much that night. Sharp, shooting pains. Some severe.

"On cross-examination: Witness said I am 26 years of age. The train was comfortably full of passengers, it being the occasion of the Yearly Meeting at High Point. As I left the train, some passengers were before me and some behind. Nice level yard. I saw the man about the time he hit me. I could not reasonably have anticipated that the man was going to hit me. Those in front of me when I left the train were gentlemen; I was the first lady. The man that struck me came from towards the engine and rushed up and mounted the steps. I had no reason to believe he was going to hit me. It was so quick. He came right up and mounted the steps. I looked down to see what was striking me, and saw the valise. My father was standing behind or beside the conductor.

"I had a conversation with Mr. Fields not long afterwards. I made a statement how it occurred, but did not tell him I

was on bottom step when it occurred, as I remember of. I think I told him I was being assisted by the conductor in a mechanical way. Don't remember telling him I was being assisted by the conductor. I did tell Fields the conductor was assisting me; and in what way, to-wit, a mechanical way. I did not state to him without qualification he was assisting me. Did not state to him I was on the last step.

"It was done very quickly. I saw the man on the ground when I first saw him, and he reached to grab the iron railing to pull up. I did not notice the valise till he struck me, and I had no reason to believe he was going to strike me. I did not speak to any one till I spoke to my father. I made some exclamation when I was struck. As soon as I got on the ground, my father was there to receive me. I saw him when I was standing on the platform, and my father says he saw me on the platform. This happened on Saturday night, and I had a doctor on Monday afterwards. The first doctor told me, after a few days, my wounds would be temporary. That I would walk about soon. The conductor helped me down after I was hurt. He took me by the hands like the conductors do. I did not tell him I was hurt.

"I made known to the railroad company that I was hurt not very long after I was hurt. It was quite a long step from the ground to the first step leading into the cars. I had my right hand on the rail-guard next to the car when I was struck. The man was not standing on the ground when he hit me. The conductor was standing about where they usually stand when they help people to alight.

"The man with the valise was the first that started to get on the train. (There was evidence offered tending to show the nature and extent of plaintiff's injuries, and also of the expenses incurred by her.)

"The plaintiff then rested, and the defendant did not introduce any evidence, but made a motion to dismiss the plain-

tiff's action as upon non-suit under the Hinsdale Act. His Honor declined to grant the motion, and submitted the question to the jury thereupon.

"After verdict, plaintiff moved for judgment against the defendant, and tendered the following judgment, which was refused, to-wit:

" 'This action coming on for trial at this term before a jury, and being tried, and the jury having found the following issues in favor of the plaintiff, Bertha Fritz, to-wit:

" '1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint?

" 'Answer: "Yes."

" 'What damage, if any, is plaintiff entitled to recover?

" 'Answer: "$2,000." '

"It is, therefore; on motion of Barringer and Scott, attorneys for the plaintiff, adjudged that the plaintiff, Bertha Fritz, do recover of the defendant, the Southern Railway Company, as damages for such negligence the sum of two thousand dollars, together with costs of this action.'

"The Court then, upon motion of defendant's counsel to set aside the verdict as being against the weight of evidence, set aside the first issue as being against the weight of the testimony, and on that issue ordered a new trial, but declined to set aside the verdict as to the second issue, the Court being of the opinion that if plaintiff was entitled to recover at all, the damages awarded were not excessive.

"To the above rulings, the plaintiff excepted and appealed."

*John A. Barringer,* for the plaintiff.
*King & Kimball,* for the defendant.

FURCHES, C. J. This is an action to recover damages for injuries sustained by the negligence of the defendant. The defendant offered no evidence, and, at the close of the plain-

tiff's evidence, moved to nonsuit the plaintiff. The Court refused this motion, and submitted the following issues to the jury:

"1. Was the plaintiff injured by the negligence of the defendant?

"2. What damage, if any, is plaintiff entitled to recover?"

The first issue was answered "Yes" and the second issue "$2,000." After the verdict was returned, on motion of the defendant, the Court set aside the verdict of the jury on the first issue, as being against the weight of the evidence; but refused to set aside the verdict on the second issue, and awarded the defendant a new trial as to the first issue. The plaintiff being dissatisfied with the ruling of the Court in setting aside the verdict on the first issue, appealed to this Court.

After a careful examination of the evidence, we are of the opinion that the defendant's motion, at the close of the plaintiff's evidence, to nonsuit the plaintiff, should have been allowed. There is no evidence, in our opinion, showing negligence on the part of the defendant. But as the defendant did not appeal, it can not have the benefit of this motion. And while the order of the Court in setting aside the verdict on the first issue, which destroyed the plaintiff's right to any judgment, it is singular that the finding on the second issue was allowed to stand. But as we do not think the plaintiff was entitled to any judgment against the defendant, we can not say that there was error in setting aside the finding of the jury on the first issue. And that is all that is presented by this appeal, and there is no error in that part of the judgment appealed from. No error presented by the case on appeal.

No Error.