FRITZ v. SOUTHERN RAILWAY CO.

(Filed June 6, 1903.)

NEGLIGENCE—*Carriers—Passengers—Personal Injuries—Nonsuit.*

The plaintiff, attempting to alight from defendant's train, had reached the second step of the platform, when a heavy man caught hold of the car rail, swung himself up on the step, his valise striking plaintiff on the knee and injuring her. The conductor and plaintiff's father were both standing near by. Plaintiff testified it could not reasonably have been anticipated the man was going to hit her. The conductor could have seen the man coming if he had been attending to his business. The rules of the company required conductors to give particular attention to women and children. Under these facts a motion for nonsuit was properly granted.

CLARK, C. J., dissenting.

ACTION by Bertha Fritz against the Southern Railway Company, heard by Judge *Thomas A. McNeill,* at October Term, 1902, of the Superior Court of GUILFORD County. From a judgment of non-suit, the plaintiff appealed.

*L. M. Scott* and *John A. Barringer,* for the plaintiff.
*King & Kimball,* for the defendant.

CONNOR, J.    This action is prosecuted by the plaintiff for the recovery of damages sustained by her on account of the

alleged negligence of the defendant. The plaintiff alleges, and the testimony for the purpose of the appeal, establishes the fact that she was on the 12th of August, 1899, a passenger on the defendant's train and that she purchased a ticket from Thomasville to High Point, reaching the last named place about 9 o'clock at night. After the train stopped at the station, she together with other passengers left the car at the rear end, following the conductor, for the purpose of alighting. She had reached the second step, and the conductor was standing on the ground, his head turned back over his shoulder in the direction of the engine, in which direction there were some young ladies. If he had been standing straight he would have been facing the plaintiff. The plaintiff's father was standing behind the conductor about three paces, and a little to the west of him. Quite a crowd were at the station. As the plaintiff reached the second step a heavy man with a valise in his hands came rapidly down the side of the car in the direction of the engine, and, as he reached the step caught hold of the car rail and swung himself up on the step, his valise striking the plaintiff on the knee and injuring her. The train was stopped at the usual place. The conductor was in front of the steps. The man intended to board the train, and the conductor told him to stop. He noticed the man after he had gotten up and told him to stand aside where he was, and the man did so. The plaintiff, in  response to a question, testified: "I believe you said on a former trial that this man came rushing up very hastily in the direction of the engine and made no stop?" Answer, "Yes." "You said that you could not have anticipated that he was going to hit you, and it could not have been reasonably anticipated?" Answer, "Yes." "And you say it now?" Answer, "Yes." When the man got up the plaintiff came down, and when in reach of the conductor he took her hand. The plaintiff had no reason to believe that

the man was going to hit her.   The whole thing was quickly
done.   The conductor could have seen him coming from the
direction of the engine if he had been attending to his busi-
ness.   The plaintiff's father was standing about three paces
away.   The car steps are 26 inches wide and 22 inches be-
tween rails.   The plaintiff's father said that the man who
struck her was a large red-faced man, looked like he might
have been a mechanic.   The conductor helped the plaintiff
down.   The platform was a good one.   The plaintiff intro-
duced certain rules of the defendant company and showed
that they were furnished to conductors in its employ:

Rule 408.   Conductors must always be vigilant to fore-
see, and as far as possible to prevent anything which might
cause accident or delay to their trains.

Rule 426.   They must contribute as far as they can, with-
out being unduly officious, to the convenience and comfort of
passengers and must give particular attention to women and
children who are unattended, and to all persons who are in-
firm, inexperienced or otherwise unable to care for them-
selves.

Rule 448.   Passenger conductors should never lose sight of
the fact that their duties are of a most delicate and respon-
sible character, and demand unusual judgment, tact and
courtesy, and that the safety of their trains and passengers
and the reputation of the road are dependent upon their dis-
cretion and care.

Upon the close of the plaintiff's testimony the defendant
moved for a judgment of non-suit, which was allowed and
the plaintiff appealed.

When this cause was before this court at the February
Term, 1902 (130 N. C., 279), the testimony was the same
as upon this appeal, except that the rules of the company
had not then been introduced.   Furches, C. J., speaking for
the court, said:   "After a careful examination of the evi-

dence we are of the opinion that the defendant's motion, at the close of the plaintiff's evidence, to non-suit the plaintiff, should have been allowed. There is no evidence, in our opinion, showing negligence on the part of the defendant." The case was disposed of upon another question.

We are of the opinion that the ruling of this court should be affirmed. We do not think the rules of the company introduced by the plaintiff did more than declare the measure of duty which the defendant owes to its passengers. In *Brittain v. Railroad Co.,* 88 N. C., 536; 43 Am. Rep., 749, Ruffin, J., says: "According to the uniform tendency of these adjudications, which we admit as authorities, the carrier owes to the passenger the duty of protecting him from the violence and assaults of his fellow passengers or intruders, and will be held responsible for his own or his servant's neglect in this particular, when, *by the exercise of proper care,* the acts of violence might have been foreseen and prevented; and while not required to furnish a police force sufficient to overcome all force when unexpectedly and suddenly offered, it is his duty to provide ready help sufficient to protect the passenger against assaults from every quarter, which might reasonably be expected to occur under the circumstances of the case and the condition of the parties." This rule we find fully sustained by the decisions of other courts and the text-books.

In *Putnam v. Broadway & Seventh Ave. R. Co.,* 55 N. Y., 108; 14 Am. Rep., 190, it is said: "A railroad company has the power of refusing to receive as a passenger or to expel any one who is drunk, disorderly or riotous, or who so demeans himself as to endanger the safety or interfere with the reasonable comfort and convenience of the other passengers, and may exert all necessary power and means to eject from the cars any one so imperiling the safety, or annoying others; and this police power the conductor or other servant of the company in charge of the car or train is bound to exercise

with all the means he can command, whenever occasion requires.   If this duty is neglected without good cause and a passenger receives injury, which might *have been reasonably anticipated* or naturally expected from one who is improperly received or permitted to continue as a passenger, the carrier is responsible."

The Supreme Court of Iowa in *Felton v. Railroad Co.*, 69 Iowa, 577, held that, upon a finding by the jury that the defendant ought not reasonably to have anticipated that an assault would be committed on the deceased the defendant was not liable.

In *Flint v. Transportation Co.*, 34 Conn., 554, it is held that "Carriers of passengers for hire are bound to exercise the utmost vigilance and care in maintaining order and guarding those they transport against violence from whatever source arising, *which might be reasonably anticipated,* or naturally expected to occur, in view of all the circumstances, and of the number and character of persons on board."

There is no controversy in this case in regard to the relation which the plaintiff occupied toward the defendant. She was a passenger, having paid her fare, and at the time of the injury the contract of carriage had not come to an end. She was, therefore, entitled to demand of the defendant the degree of care for her protection prescribed by the law and the rules of the company.   In the very excellent brief filed by the plaintiff's counsel, many authorities are cited to establish this proposition.   They also cite authorities to the effect that if the conductor was negligent and, by reason of such negligence, a third party, as in this case, a fellow passenger, injured the plaintiff, the defendant would be liable.   The question which lies at the threshold of this case is whether there is any negligence on the part of the conductor.   It will be observed that in the cases cited the question of liability is

made to turn upon a neglect of duty, as do all cases of negligence. The right to recover is dependent upon a failure on the part of the conductor to maintain such care as would prevent an injury *which could be reasonably anticipated* or, as said by Justice Ruffin in Brittain's case, *supra,* could have been foreseen and prevented." The plaintiff here testifies expressly that the man who injured her was coming very rapidly, and that, "you could not have anticipated that he was going to hit you, and it could not have been reasonably anticipated." Applying the principle which is to govern the case, this language of the plaintiff relieves the defendant of any actionable neglect. Her statement is sustained by the circumstances surrounding the transaction. She said in reply to a question, that she had no reason to believe that this man was going to hit her. Her father, standing within three paces of the conductor and seeing the man coming, did not anticipate any trouble. The man had a right as a passenger, seeking to board the train, to go to the step and, so soon as he could safely do so, enter the car. The fact that he was coming rapidly was not calculated, in view of the conduct of men under such circumstances, to arouse in the conductor any apprehension that he would attempt to board the car in a rough and violent manner. He made no such impression on the plaintiff or her father. If the conductor had stopped him before he reached the step, the defendant would have been liable in an action for damages.

We do not intend to relax in the slightest degree the rules of the company or the high degree of care which the law requires of conductors in protecting their passengers. But we do not think that, in view of this testimony, these rules applied to the conductor's conduct show any negligence on his part. The general rule is that whenever a carrier through its agents or servants knows or has opportunity to know of a threatened injury or might have *reasonably antici-*

*pated* the injury, and fails or neglects to take the proper precautions or to use proper means to prevent or mitigate such injury, the carrier is liable.

We have carefully examined the case of *Sheridan v. B. & N. Ry. Co.,* 36 N. Y., 39; 93 Am. Dec., 490, cited by the plaintiff's counsel. There, the plaintiff's intestate, a child of nine years, was compelled by the conductor of a crowded railroad car to stand upon the platform, and while there was thrown from the car by the hasty and careless exit of another passenger. The company was properly held liable, Mr. Justice Hunt saying: "For the present we are to assume that the deceased was upon the platform by the express requirement of the defendants and against his own remonstrance, properly, so far as the defendants are concerned. If by the motion of the cars he had been thrown from his dangerous position, or by the continued pressure of the large crowd which the defendants had permitted upon their cars, he had been pushed from his standing place, the defendants would have been liable. It does not alter this liability that the the wrong of a third party concurred with their own in producing the injury. It may well be that the young man was not justified in rushing through the crowd and in aiding in throwing the deceased from the cars; but this does not relieve the defendant's wrong. If they had not removed the deceased from his seat and compelled him to stand upon the platform, he would have been unaffected by this illegal act of the young man. It was his violence, concurring with the defendant's illegal conduct in overcrowding their cars and in placing the deceased upon the platform, that produced the disastrous result." The wrongful act of the defendant in that case was in compelling the plaintiff's intestate to stand upon the platform. In our case there was no wrongful act in respect to the plaintiff's being upon the second step in alighting from the car. There was no suggestion of over-

crowding preventing her from leaving the car in the usual manner, nor is there any suggestion that the conductor was not in his proper place. The only suggestion made is that he was looking over his shoulder, with an intimation that his attention was attracted by some young ladies. It does not appear that he was prevented from seeing the man approach the car. On the contrary the plaintiff testifies that immediately upon his swinging himself upon the step the conductor stopped him. While we fully recognize the very delicate duties imposed upon conductors in looking after their passengers, and would not lower the standard by which their duty is measured, we cannot fail to also recognize that as the train stops at the station the duty becomes exceedingly difficult, in respect to passengers alighting and those desiring to enter the car. We would not be willing to say that the momentary attraction of the conductor's attention, even by young ladies, would constitute negligence. In applying the rules of law to the conduct of men in the discharge of their various duties of life, we must recognize existing conditions; and while we enforce a high degree of care between agents and servants of railroads and their passengers, we must not impose unreasonable requirements or expect men to anticipate and provide against contingencies beyond the capacity of the human mind. It is certainly desirable that in public stations and in other places where people assemble more consideration for each other's welfare, safety and comfort be observed. The conduct of the man who caused this injury was inconsiderate and perhaps rude, but conductors no more than other men can be required to anticipate that men are going to act in a rude and inconsiderate manner towards ladies. While they must be upon the alert, they can not be expected to anticipate conduct which the plaintiff herself says could not have been anticipated, and which did not attract the attention of her father standing nearby the conductor. While the injury sustained

by the plaintiff is a source of regret, we can not see that it is the result of any actionable negligence on the part of the defendant's conductor. In regard to the width of the steps, it is not suggested that they should be wide enough for two persons to pass. The rules of the company require that passengers entering cars shall await the exit of those leaving. This we think is a reasonable requirement.

Upon the whole evidence we are of the opinion that the judgment of non-suit should be

Affirmed.

CLARK, C. J., dissenting. The defendant owed the plaintiff a safe exit from its cars. The usual requirement nowadays, wherever there is much travel, is that outgoing passengers leave by one door of the car and incoming passengers enter at the other. This prevents any collision between the two streams of passengers, and it is negligence for a railroad company not to establish and enforce reasonable regulations, which are in general use, to prevent accidents by the strong trampling upon the weak, burly men running over weak and delicate women and children.

The plaintiff was descending and on the second step when a strong, able-bodied man with a heavy iron-bound valise in his hand, caught hold of the iron stanchion to swing himself up. The conductor was standing by the step, and, if advertent to his duties, instead of allowing his attention to be attracted elsewhere, he could certainly have put out his hand more quickly than the man could swing his own weight and that of the valise up, and have made him wait until the lady and other passengers had gotten out. At least, this was evidence for the jury to consider, and this court, I think, should not hold as a proposition of law that it was not negligence for the conductor to permit the heavy man and his heavy valise to crowd up the steps twenty-two inches wide, on which the

lady was descending and where she had the right of way. The lady says she did not anticipate the man would strike her with the valise. If she had, it might have been contributory negligence, possibly, not to have called out or shrunk back (if possible) but because, relying on the care of the defendant's servant, she was not thus guilty of contributory negligence, it is hard measure to hold that therefore the conductor was not negligent in not stopping the man, nor the company in not having safe regulations to prevent collision between incoming and outgoing streams of passengers. The conductor was at the foot of the steps and should have seen, sooner than the lady or than her father, who was three steps away, that the heavy man with the heavy valise had laid hold of the iron rod to swing up on the crowded steps. The conductor's hand should have been instantly stretched out across the steps, and he should have told the man politely, but firmly, he could not go up till those on the steps had descended. If there was any reason to the contrary the conductor should have gone on the stand and have told what it was. Whether the conductor was attending to his duties or negligent, in the premises, was a matter of fact to be determined by the jury.

When the case was here on the former appeal (130 N. C., 279) this present question as to whether there was any evidence was not before the court, and could not be, for the appeal was by the plaintiff from the judgment below granting the new trial, and the court expressly so stated in the opinion. Besides, there was some additional evidence on the last trial. His Honor in the second trial below was doubtless misled by the first headnote in the former appeal.