WILLIAM J. FRAZIER. APPELLANT, v. PUBLIC SERVICE RAILWAY COMPANY, RESPONDENT.

Submitted December 8, 1921—Decided April 13, 1922.

1. A common carrier of passengers is under obligation to use a high degree of care and diligence in protecting passengers against insult or violence by fellow passengers, whether actual or reasonably to be anticipated, and for failure in the performance of its duty in this regard, may be held liable in damages. In affording such protection the servants of the carrier may, in a proper case, eject the offending passenger from the conveyance, and may further, in case of necessity, call for and utilize the assistance of such passengers as are willing to aid.

2. A passenger responding to the lawful call of servants of the carrier to aid in ejecting an offensive or disorderly fellow-passenger does not cease thereby to be entitled to the protection against violence that is owing to all the passengers; and if after he has responded to the call of servants of the carrier he is injured because the latter desert him or fail to give him all the assistance reasonably in their power, the carrier is liable.

On appeal from the Camden County Court of Common Pleas.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KALISCH.

For the appellant. *D. Trueman Stackhouse* and *Charles W. Letzgus.*

For the respondent, *Lefferts S. Hoffman* and *Henry H. Fryling.*

The opinion of the court was delivered by

PARKER, J. The appeal is from a judgment of nonsuit. Plaintiff was riding as a passenger on a trolley car of the defendant company, when a negro entered the car and took a seat alongside him. The plaintiff's testimony, which must be taken as true for the purpose of determining whether the

nonsuit was proper, indicates that the newcomer was drunk, and was smoking and using objectionable language characterized by plaintiff as unfit for anybody to hear; that the conductor told him to stop smoking and to stop using that language or he would have to put him off the car; that the negro said he could not do it; the conductor said he could get help, and the negro retorted that if anyone undertook to put him off the car he "would cut his guts out." That thereupon the conductor asked plaintiff to give him a hand to put the man off; plaintiff assented; the conductor and plaintiff laid hold of him and got him on the back platform and toward the step, when the negro drew a knife, and the conductor seeing this immediately backed into the car, leaving plaintiff struggling alone with the man, who cut plaintiff in the face and leg, hit him in the chest and then ran away; that during this latter struggle the conductor stood and looked on, and made no attempt to go to the assistance of plaintiff, though it appeared in the testimony that the conductor had a revolver. There was other evidence in the plaintiff's case to the effect that plaintiff undertook the ejection alone and without any solicitation by the conductor; but, as already noted, the evidence most favorable to plaintiff's case must be taken as true for present purposes.

We are of opinion that the nonsuit was erroneous. The carrier owes to the passenger the duty of protecting him from the violence and insults and assaults of fellow-passengers and intruders, and will be held responsible for its own or its servants' neglect in this particular, when, by the exercise of proper care, the acts of violence might have been foreseen and prevented. *Exton* v. *Central Railroad Co.,* 62 *N. J. L.* 7; 63 *Id.* 356; *Haver* v. *Central Railroad Co.,* 62 *Id.* 282, 284; *Partridge* v. *Woodland Steamboat Co.,* 66 *Id.* 290; *Hoff* v. *Public Service Railway Co.,* 91 *Id.* 641; *Skillen* v. *West Jersey and Seashore Railroad Co.,* 96 *Id.* 492. A similar rule prevails in other jurisdictions. 5 *R. C. L.* 122; 5 *Encycl. L.* (*2d ed.*) 541, 548; 10 *C. J.* 900; *Stewart* v. *Railroad Co.,* 90 *N. Y.* 588, 591; *Flint* v. *Norwich and New York Transportation Co.* (*United States Circuit Court*), 34 *Conn.* 554;

*Pittsburgh, F. W. & C. Ry. Co.* v. *Hinds,* 53 *Pa. St.* 512; *Pittsburgh and Connellsville Railroad Co.* v. *Pillow,* 76 *Id.* 510 And in the performance of that duty the conductor was entitled, if necessary, and, indeed, may be required in some cases, to eject the offending passenger from the conveyance, and may, further, in case of necessity in order to accomplish such ejection, call to his aid such of the passengers as would be willing to assist him. *Pittsburgh, &c., Railway Co.* v. *Hinds, ubi supra,* especially page 517. Such a situation the jury might say existed in this case. But if plaintiff, at the request of the conductor, undertook to aid him in accomplishing such lawful ejection for the benefit of passengers generally, the plaintiff in no way waived or forfeited his right to such protection as the company could give him as a passenger any more than if he had kept his seat and refused to aid. And so, if, as his testimony indicated, the conductor after enlisting his services abandoned him and left him to bear the brunt of the struggle alone, it was open to the jury to say that the company through its servant defaulted in the discharge of the fundamental duty laid on it to protect its passengers from violence by all means reasonably within its power. So that on this aspect of the case, at least, the plaintiff had made out a case for the jury.

There was, as already observed, another theory of the facts open to the jury, viz., that plaintiff intervened and undertook to eject the negro alone and without any request from the conductor to do so. This phase of the case, however, is not argued, and we express no opinion upon it.

Let the judgment be reversed, to the end that a *venire de novo* issue.