Kinney v. Louisville & Nashville Railroad Co.

CASE 14—PETITION ORDINARY—MARCH 26.

# Kinney v. Louisville & Nashville Railroad Company.

APPEAL FROM FRANKLIN CIRCUIT COURT.

1. COMMON CARRIERS—LIABILITY FOR INSULT AND VIOLENCE TO PAS-SENGER.—Carriers are not the insurers of the absolute safety of their passengers or of their entire immunity from the misconduct of fellow-passengers or of strangers, but there is an implied obligation growing out of the contract between the carrier and the passenger, that the former shall afford to the latter reasonable protection and immunity from the insults, violence and wanton interference of intruders, fellow passengers and employes. And out of this obligation arises the rule that makes it the duty of carriers to exercise the highest practicable degree of care and diligence in protecting and guarding passengers from violence and assaults from whatever source, which may be reasonably anticipated or naturally expected to occur under the circumstances of the case and the condition of the parties.

2. SAME.—But in view of the facts and circumstances in this case those in charge of the train did all that the law required them to do for the protection of the appellant, and the evidence shows that the conductor acted wisely and discreetly in view of his responsibility and the circumstances of the case, and fully within the scope of his authority, and the peremptory instruction was, therefore, properly given.

3. CONDUCTORS—AUTHORITY OF.—Conductors in this State are not
   clothed with the authority to act as peace officers, but the statute
   . does prescribe a penalty against one who, while riding on a train,
   in the hearing or presence of other passengers, and to their an-
   noyance, "uses or utters obscene language, or behaves in a bois-
   terous or riotous manner," and makes it the duty of the con-
   ductor in charge of such train "either to put such person off the
   train or to give notice of such violation to some peace officer at
   the first stopping-place where any such officer may be."

J. A. SCOTT AND W. H. HOLT FOR APPELLANT.

1. The evidence as to the character of Estes' claim against appellant,
   that it originated from a gaming transaction while they were
   both in jail for fines, was incompetent, and only tended to preju-
   dice the jury against appellant and divert their attention from
   the real issue.
2. It is the duty of a common carrier to protect its passengers from
   outrage, insult and injury at the hands of another passenger;
   and this, although the insulted or injured passenger may have
   been the debtor of the passenger offering the violence.

IRA JULIAN FOR APPELLEE.

1. While the law requires carriers of passengers to exercise reason-
   able care to preserve order and prevent assaults by one passenger
   upon another, with such force as they may have at hand, yet they
   are not the insurers of the personal safety of passengers against
   insults or assaults of a fellow passenger.   And particularly
   should this qualification of the general rule apply where conduc-
   tors have no police powers, and are not authorized to bear arms
   or make arrests.   (Railroad v. Hinds, 53 Penn. St., 512; Cannon
   v. R. Co., 6 Ire., C. L., 199; Putnam v. R. Co., 55 N. Y., 108.)

JUDGE LANDES DELIVERED THE OPINION OF THE COURT.

The action was to recover damages from the appellee for
failing to protect the appellant, who was a passenger on one
of its trains from the city of Louisville to the city of Frank-
fort, from abuse, violence and alleged robbery at the hands
of one Jack Estes, a fellow passenger.

The lower court, on motion of counsel for appellee, at the

conclusion of the testimony in behalf of appellant, instructed the jury to find for appellee, which was done, and the petition was accordingly dismissed. The only material question presented is whether, upon the facts in proof and the law applicable to such cases, this peremptory instruction, which was duly excepted to, was proper.

There were other exceptions taken by counsel for appellant to rulings of the court during the progress of the trial, in admitting and excluding testimony, which it is not necessary to notice because, in our view of the case, the rulings in these particulars were on immaterial points, and were not, in any event, prejudicial to the substantial rights of the appellant on the merits. We shall, therefore, confine ourselves to the questions presented in the exception of appellant to the instruction given by the court to the jury to find for the appellee.

The principles of law applicable to such cases as this are well settled by the almost uniform adjudications of the courts in this country. Carriers are not held to be the insurers of the absolute safety of their passengers or of their entire immunity from the misconduct of fellow passengers or of strangers; but there is an implied obligation growing out of the contract between the carrier and the passenger that the former shall afford to the latter reasonable protection and immunity from the insults, violence and wanton interference of intruders, fellow passengers and the carrier and his servants. (Winnegar's adm'r v. Central Passenger Ry. Co., 85 Ky. Rp. 553; Sherley, &c., v. Billings, 8 Bush, 147.)

Out of this obligation, and the doctrine that carriers of passengers are required to use the utmost care in the management of their trains in order to prevent or avoid injury to their passengers, arises the rule that makes it the duty of

carriers to exercise the highest practicable degree of care and diligence in protecting and guarding their passengers from violence and assaults from whatever source, which may be reasonably anticipated or naturally expected to occur under the circumstances of the case and the condition of the parties; and if this duty is neglected or, without good cause, omitted by the carrier or his servant, the carrier will be held responsible for any injury to a passenger resulting from such neglect or omission, and which, but for same, might have reasonably been foreseen and prevented. These principles, it seems, are recognized and enforced by an almost unbroken line of decisions in this country. (Britton v. Atlanta & Charlotte Air Line Ry. Co., 88 N. C. Rep., 536; New Orleans R. Co. v. Burke, 53 Miss., 200; Pittsburg, &c., R. Co. v. Hinds, 53 Pa. St., 512, Pittsburg v. Pillow, 76 Pa. St., 510; Flint v. Norwich Transportation Co., 54 Conn., 554; Spohn v. Missouri Pacific R. Co., 26 Am. & Eng. R. Cases, 252; Thompson on Carriers, 303; Putnam v. Broadway, &c., R., 54 N. Y., 108; 14 Am. Rep., 190.)

And in the last-named case it is held, in harmony with the principles above stated, that a carrier is not responsible for the results of a sudden, unlooked for and violent attack committed by a passenger on a fellow passenger, although the assailant was intoxicated and had addressed insulting remarks to his fellow passenger, but remained quiet after being admonished by the conductor.

In this case the evidence brought up in the bill of exceptions shows substantially the following state of facts, viz.: The appellant and one Jack Estes were near neighbors and associates. They both boarded the train of appellee at Louisville, taking passage to Frankfort. They had both been drinking while in Louisville, and when they boarded the train Estes was very much under the influence of liquor,

and he had a bottle of brandy with him, which served to keep him in a condition of intoxication during the trip to Frankfort. They entered different cars, but, after the train had gone some distance on the route to Frankfort, Estes, in his intoxicated condition, went into the car occupied by the appellant and took his seat near appellant, and soon commenced talking to him in a boisterous manner, claiming that appellant owed him a sum of money, and demanding it of him. After some time spent in this way appellant left the car to get out of the way of Estes, and entered the ladies' coach, and, taking his seat there, soon fell asleep. About the time the train reached Eminence or Pleasureville Estes entered the ladies' coach, where he found the appellant, and renewed his demand for the money he claimed appellant owed him, cursing and swearing at him, and saying he intended to have his money or his life.

It seems that the ladies in the coach were considerably disturbed by the loud and boisterous and threatening language of Estes, and the conductor, who came into the coach about the time or very soon after Estes entered it, remonstrated with Estes, who had his hands on the appellant, and told him to let appellant loose. Estes told him that appellant owed him money, and that he intended to have it or his life. The conductor ordered Estes to leave the ladies' coach and go into another car, and finally ordered both of them to go into another car, as he did not intend there should be any difficulty in the ladies' coach. It appears that appellant refused to go, and Estes swore he would not go unless appellant went, and when the conductor ordered them both to go appellant's testimony shows that Estes took him by the hair and pulled him out of his seat, and they then left the ladies' coach, together with the conductor.

After they entered the other car appellant went forward

and took his seat with a stranger, and Estes remained back with the conductor, still cursing and threatening appellant, but the conductor finally pacified him, and he remained quiet until the train was near Frankfort, when Estes renewed the difficulty, and repeated his demands for the money he claimed appellant owed him. Meantime the conductor was standing near the appellant, and between him and Estes evidently trying to pacify the latter, when Estes, reaching around the conductor, said he would take the pistol of the conducter and shoot appellant if he did not pay him the money, but drew his own pistol and pointed it at appellant. The latter then threw his pocket-book, containing fifty-one dollars, into the lap of the stranger, by whom he was sitting, and asked him to count it and give it to Estes, which he did, but the money was soon after returned to appellant. Meantime it seems that the conductor was still between them, and while this latter scene was being enacted the train reached Frankfort, and the conductor forthwith called a policeman, who immediately entered the car and arrested Estes. What followed is immaterial, since the appellee or its servants had no further connection with the incident.

The bill of exceptions contains the following as part of the testimony of the appellant before the jury, viz.: "Estes and I had been drinking together off and on before we left Louisville. I live in the same neighborhood with Estes; have known him for years. We were good friends, and I knew his threats and conduct toward me all proceeded from whisky on the day of the trouble."

From the foregoing statement of the material facts of the case, fairly deduced from the evidence in the record before us, we feel constrained to say that, in our opinion, the appellee or its servants in charge of the train were not in

fault, but that they did all that the law required them to do, in view of the circumstances of the case and the condition of the parties, for the protection of the appellant.

The conductor in charge had others under his care besides the appellant whom it was equally his duty to protect. The occupants of the ladies' coach, in which there was a difficulty pending between the appellant and Estes, were entitled to protection, and it was plainly the duty of the conductor to exclude the contending parties from the coach in order to secure the safety of the other passengers therein. Having done this, he succeeded in quieting Estes, who was still intoxicated, and who remained quiet and gave the appellant no more trouble until the train was near Frankfort; and then, when the difficulty was unexpectedly renewed by Estes, the conductor remained between him and the appellant until the train reached a point in the city where he could call in a policeman.

The conductor acted wisely and discreetly in view of his responsibility and of the circumstances of the case, and fully within the scope of the obligations devolved upon the carrier company, and upon himself as its servant, by the law as we have stated it and as found in the statute.

In this State conductors of railroad trains are not clothed with the authority to act as peace officers as they are in some jurisdictions; but the statute denounces a penalty against any person who, while riding on a passenger or other train, in the hearing or presence of other passengers, and to their annoyance, "uses or utters obscene language, or behaves in a boisterous or riotous manner," and *makes it the duty* of the conductor in charge of the train upon which there is a person who has violated the statute, *"either* to put such person off the train *or to give notice* of such violation to some peace officer at the first stopping place where any such

officer may be." (Kentucky Statutes, section 806.)

We are of the opinion that the facts of this case, as devel-oped in the testimony for the appellant under the law as stated and applied, would not have justified a verdict against the appellee, and that the peremptory instruction was properly given.

The judgment of the lower court is,therefore, affirmed.