## Peak v. Louisville & Nashville Railroad Company.

(Decided May 20, 1927.)

### Appeal from Clark Circuit Court.

1. Carriers.—While carriers are not insurers of the absolute safety of their passengers, they must exercise the highest practicable degree of care and diligence in protecting and guarding them from violence and assaults from any source which may be reasonably anticipated or naturally expected to occur under the circumstances.
2. Carriers.—In action for personal injuries caused by intoxicated passenger who suddenly drew a revolver and shot plaintiff, a fellow passenger, evidence as to whether the train crew should have anticipated violence held insufficient for the jury.

MARCUS C. REDWINE for appellant.

BENTON & DAVIS, CHAS. S. LANDRUM and WOODWARD, WARFIELD & HOBSON for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

On the night of November 21, 1925, the appellant boarded one of the trains of the appellee at Jackson, Ky., bound for Winchester.    He had been hunting all day and was very tried, so that after the conductor had taken up his ticket he went to sleep and except on one or two occasions when the train was stopping at some of the intermediate stations he remained asleep until just before the tragedy we shall presently mention.    As a result he knows very little of what took place on the train.    From the other testimony, however, we find that a man by the name of M. G. Lovelace was on the train that night.    When the train reached Jackson, Lovelace got off for the pur-

pose of getting something to eat. From his actions at that time it is plain that he had been drinking. He was rather inconsiderate of the other people in the passenger station and talked rather loudly and boisterously. When he got back on the train he seems to have first gotten into the smoker, where he continued to talk in a loud and boisterous manner, although so far as the record shows he indulged in no obscenity or profanity. He possibly indulged in a drunken prank of tipping the hats on the heads of passengers, but so far as this record shows none of the crew of the train observed or knew of this conduct on his part. He then went back into the ladies' coach; but the evidence shows that although an observer could see that he was under the influence of liquor he conducted himself in the ladies' coach in an orderly manner. Later the conductor brought him back into the smoker, but just why the conductor did this is not shown in this record. When the conductor got him back into the smoker the conductor turned the seat and told him to lie down and go to sleep. Lovelace quarreled in an inoffensive sort of way for a while about his overcoat being lost, although it is shown that his overcoat then was right on the seat beside him. At all events Lovelace dozed off for a while. When he awoke he indulged in some loud talk, and a secret service man of the appellee who happened to be on the train that night observed that Lovelace was under the influence of liquor. However, although Lovelace was loquacious, he does not seem to have been either profane or obscene nor was he giving any indication that he was violently drunk or about to do anybody any harm. Just after the train left Ravenna the conductor came through working his train. Lovelace said something to the conductor, who laughingly replied: "All right, big boy, I'm coming."

The conductor then passed on into the ladies' coach. Shortly thereafter for no apparent reason Lovelace stood up in his seat, whipped out a revolver, shot and killed a passenger seated just in front of him, then turned and shot and severely wounded a passenger just across the aisle, and then turned and shot the appellant, who, having awakened and seeing what was going on, was hastily making his way out of the rear door of the smoker. The appellant was severely wounded. He brought this action against the appellee to recover damages on the theory that the appellee had failed to exercise ordinary care to protect him while a passenger on the train. At the con-

clusion of the appellant's testimony, which we have summarized above, the court peremptorily instructed the jury to find for the appellee, and from the judgment entered on that verdict the appellant appeals.

The appellant agrees that the rule of law to govern this case is that which is aptly set forth in the case of Payne, Agent v. Moore, 196 Ky. 454, 244 S. W. 869, which was a similar case to the one now under consideration. In that case we said:

"The law applicable to a case of this kind may be stated as follows: Carriers are not insurers of the absolute safety of their passengers, or of their entire immunity from the misconduct of fellow passengers, though there is an implied obligation, growing out of the contract between the carrier and the passenger, that the former shall afford to the latter reasonable protection and immunity from the insults, violence, and wanton interference of fellow passengers, intruders, or the carrier's servants. Out of this obligation and the doctrine that carriers of passengers are required to use the utmost care in the management of their trains in order to prevent or avoid injury to their passengers, arises the rule that makes it the duty of carriers to exercise the highest practicable degree of care and diligence in protecting and guarding their passengers from violence and assaults from whatever source, which may be reasonably anticipated or naturally expected to occur under the circumstances of the case and the condition of the parties; and where a passenger is injured because of the carrier's failure to perform this duty, the carrier is responsible. Kinney v. Louisville & N. R. Co., 99 Ky. 59, 34 S. W. 1066 (17 Ky. Law Rep. 1405); Louisville Railway Co. v. Wellington, 137 Ky. 719, 126 S. W. 370, 128 S. W. 1077. But if the passenger has been assaulted by a fellow passenger under circumstances that could not have been reasonably anticipated by the carrier in time to prevent the assault the carrier is not liable. 4 R. C. L. 1186; Louisville R. Co. v. Brewer, 147 Ky. 166, 143 S. W. 1014, 39 L. R. A. (N. S.) 647, Ann. Cas. 1913D, 151. In the case at bar it was not shown that the assault was committed in the presence of the conductor or brakeman or any other employee. On the contrary, it appears that the assault was committed when the train was

slowing down for the station and at a time when the brakeman and conductor had gone to other parts of the train preparatory to the performance of the duties required of them when the station was reached.''

In this case the assault was not committed in the presence of any of the train crew. It therefore turns on whether or not Lovelace had been guilty of any prior misconduct which would have induced a reasonably vigilant and prudent conductor or brakeman to anticipate that such an assault might be made. We can find nothing in the record to answer that question in the affirmative. It is true that it was perfectly obvious that Lovelace was drinking and it is true that he had been somewhat loud and boisterous and possibly playful, but he is not shown to have been profane or obscene nor to have displayed any temper or ill will towards any one on the train. He had indulged in no acts of violence or incipient violence. He was garrulous, but that is about all that·can be said of his conduct. We are therefore clearly of the opinion that he had done nothing which would have induced a reasonably prudent and vigilant member of the train crew to anticipate that he would indulge in any such violence as he did. This being true, the lower court committed no error in peremptorily instructing the jury to find for the appellee.

Its judgment is therefore affirmed.