CASE 30—ELECTION CONTEST BY W. C. EVERSOLE V. IRA COMBS FOR COUNTY JUDGE.—DEC. 3.

# Combs v. Eversole.

APPEAL FROM PERRY CIRCUIT COURT.

JUDGMENT FOR CONTESTANT, CONTESTEE APPEALS. AFFIRMED.

ELECTIONS—CONTEST—TIME FOR ANSWERING—FLAGRANT DISREGARD OF ELECTION LAW.

Held: 1. Under Election Law Ex. Sess. 1900, section 12, providing that, within twenty days after the service of summons on him, the contestee shall answer, the day on which the summons is served is included in the twenty days.

2. The returns of a precinct will be disregarded,—the officers having abandoned efforts to keep the crowd the proper distance from

Combs v. Eversole.

the voting room; a large number of ballots having been marked openly for voters, by one or more of the officers in the presence of the crowd, who could and did witness the details; some one of the officers having accompanied other voters to the booth, and there marked their ballots for them; none of the voters having been sworn as to their disability to mark their ballots; the voting going on while the officers, including the judges, were absent; some of the officers being drunk, and a judge so that he was unable to discharge his duties; neither of the judges being able to read or write; none of the officers signing the certificate, neither of the judges participating in the count, but this being done by a challenger and an inspector not appointed or sworn as required by law; the votes of one candidate being returned as for an office for which he was not a candidate, and for which no votes were cast for him; and there being evidence that early in the day one of the judges and the challenger of the opposite party agreed to vote the precinct for a certain combination which won.

W. F. HALL AND E. E. HOGG, FOR APPELLANT.

Our contention is:

1. The petition of contestant is fatally defective and the demurrer thereto should have been sustained because it charges that a large number of voters in certain precincts voted openly and a large number were illegal, but does not state that a single one of the votes, voted for contestee, or that they were counted for contestant, or that appellant received or had counted for him a single vote that he was not by law entitled to. Wooley v. City of Louisville, 15 Ky. Law Rep., p. 13.

2. The court erred in sustaining the motion of appellee to strike appellant's answer and counter-claim from the files because not filed within twenty days after service of process on him. Civil Code, sec. 681, 21 Am. & Eng. Ency. P. & Pr., pp. 702, 703, 704 and notes; 19 Ky. Law Rep.,; Hall v. Cornett, 1549; Civil Code, sec. 134; Stewart v. Stamper, 13 R., 665.

3. The court erred in throwing out the vote of certain precints because some of the votes cast therein were illegal and which could have been separated from those that were legal. Berry v. Nicholson, 11 Am. St. Rep., 767; Barnes v. Smith, 33 Am. St. Rep., 491; People v. Cook, 59 Am. Dec., 451; Parvin v. Wambins, 30 Am. St. Rep., 254; 10 Am. & Eng. Ency. Law, 2 Ed., p. 670; Banks v. Sergent, 20 Ky. Rep., 1024; Kentucky Statutes, sec. 1474, Mayor v. Barker, 99 Ky., 305.

JOHN C. EVERSOLE AND J. B. MARCUM, FOR APPELLEE.

1. The court properly sustained the motion of appellee to strike appellant's answer and counter-claim from the files. Section 12, Acts of the General Assembly 1900, requires the answer to be filed within twenty days after the service of process, which includes the day on which the process was served.

2. The returns from Lost Creek precinct, No. 9, should have been totally disregarded because the evidence shows that thirty-five voters brought in slips of paper with appellant's name written thereon and the clerk of the election, who was an ardent supporter of appellant, would take these slips and openly vote them for appellant, and also voted fifteen other votes in the booth by taking the stencil and marking the ballot for the voter himself; that the election officers were in a drunken condition all during the day, did not pay any attention to the counting and certifying the returns, and did not sign the election returns, in fact were illiterate and could not sign their names.

## AUTHORITIES CITED.

Sec. 12, p. 39 Acts of the General Assembly, Extra Session, August 1900; Child v. Smith's Heirs, 13 B. Monroe, p. 461, and authorities there cited; Batman v. Megowan, 1st Met., p. 533 and authorities cited; Wood v. Com., 11 Bush, p. 220; Bellaris v. Hester, 1 Lord Raymond, and authorities there cited; Moor v. Covington City Nat. Bank, 80 Ky. p. 305; 4th Ed.; McCrary on Elections, sec. 427, p. 312; 12 Bush, p. 401; 28 Mo., pp. 259 and 278; 92 Mo., p. 13; Rowan v. Nixon, 45 Mo., p. 340; Seely v. Killerman, 53 Minn., p. 340; Anderson v. Lykins, 20 Ky. Law Rep., p. 1001; Banks v. Sergent, 20 Ky. Law Rep., p. 1024; 4th Ed. McCrary on Elections, p. 374, and authorities cited; Beckner v. L. & N. R. R. Co., 4 Bush, p. 619; 14 Bush, 289; McDowell v. C. & O. R. R. Co., 90 Ky., p. 346; 93 Ky., p. 177; Mitchell v. Mattingly, 1 Met., 237; Lunsford v. Culton, 15 Ky. Law Rep., 497; Atty. General v. May, 99 Mich., p. 533; Russell v. McDowell, 83 Cal., p. 87; People v. Cicott, 16 Mich., p. 203; Campbell v. Mooray Mob., p. 215; Hurd v. Romies Mob., p. 429; Davidson v. Johnson (M. S., 9, p. 9, April 29, 1902.)

OPINION OF COURT BY JUDGE O'REAR—AFFIRMING.

This is a contested election case involving the title to the office of county judge of Perry county. The election was held November, 1901. On the face of the returns appellant

Combs v. Eversole.

is shown to have had a majority of 32.   The substance of the
grounds of contest, as set forth in the petition, is that the
election officers and voters of certain precincts, which gave
to appellant large majorities, had totally disregarded the
provisions of the law concerning the holding of elections,
and had practically voted by an "open ballot."   The petition
was filed and summons issued in this case on the 15th of
November, summoning the defendant to answer the allega-
tions of the petition on the first day of the following De-
cember term of the court, which convened, under the stat-
ute, on the second Monday in December.   That happened
to be the 9th day of December, 1901.   The summons was
served on the 20th day of November, 1901.   Appellant filed
his answer, containing a counterclaim, with countercharges
against certain precincts in the county which had given ma-
jorities to appellee, on the 10th day of December, 1901,
being of the second day of the December term, 1901, of the
Perry circuit court.   On motion of appellee, appellant's
answer was stricken from the files.   Before the motion was
acted upon, however, appellee had filed a reply, without
waiving his motion, and in the reply had pleaded the spe-
cial statute of limitation found in the act of the extraordi-
nary session of 1900 (page 39) concerning elections.   The
part of section 12 of that act applicable to this practice is
as follows:   "Within twenty days after the service of sum-
mons upon him the contestee shall file his answer, which
may consist of a denial of the averments of the petition and
may also set up grounds of contest against the contestant,
and if grounds are so set up they shall be especially pointed
out and none other shall thereafter be relied upon by said
party."   In Chiles v. Smith's Heirs, 13 B. Mon., 461, the
rule in regard to the computation of time was thus stated:
"When the computation is to be made from an act done,

the day in which the act was done must be-included, be-
cause, since there is no fraction of a day, the act relates
to the first moment of the day in which it was done.  But
when the computation is to be from the day itself, and not
from the act done, then the day in which the act was done
must be excluded."  The rule thus announced was followed
in Batman v. Megowan, 1 Metc., 533,—an action contesting
the office of jailer of Jefferson county.  The statute then
in existence required the notice of contest to be given with-
in ten days after the issual of the certificate of election.
The court said: "A notice that the election would be con-
tested could have been given on the same day the final ac-
tion took place. . . .  Having a right to give a notice
on the 6th day of the month, if he could also give it on the
16th, it would be allowing him a period of eleven days with-
in which to give it, although the statute declares expressly
that no application to contest an election shall be heard
unless the notice be given within ten days after the final
action of the board.  The notice was given on the eleventh
day after such an action, and was not, therefore, within the
time allowed by the statute."  Also, see Wood v. Com., 11
Bush, 220; Mooar v. Bank, 80 Ky., 305; 3 R., 674.  The
statutory provision requiring notice of contest to be
given within a given time from the date of the final
action, or from the declaration of the result, or
the issuing of the certificate of election, or the like, is per-
emptory, and the time can not be enlarged."  McCrary, Elec.,
312.  In Anderson v. Likens, 104 Ky., 699; 20 R., 1001;
47 S. W., 867, the question was whether a contestant could
file an amended notice setting up additional grounds of con-
test. This court held that it was the policy of the law "to
require the proceeding for contesting the election of an of-
ficer, for public reasons, to be commenced as soon as prac-

Combs v. Eversole.

ticable after the final action of the canvassing board, and terminated by the judicial decision, without continuance or delay usually tolerated in litigation of other matters." The rule applicable generally as to allowing amendments was held not to apply. This was followed in Banks v. Sergent, 104 Ky., 849 (20 R., 1024), (18 S. W., 149). The court is of opinion that the same rule applicable to the filing of the original petition, as to time, should apply to the defendant, governing his right to file an answer and grounds of counter contest. The reason is as strong in one case as the other, and the terms of the statute are as positive and as mandatory. The court properly rejected the answer in this case, it having been filed after the twenty days allowed by the statute.

This is the same general election under consideration in the case of Napier v. Cornett, 24 R., 576, 68 S. W., 1076. In that case we found that the manner of conducting the election in a number of the precincts had been more or less irregular; but, with one, possibly two exceptions, these irregularities seem to have been innocent, so far as the officers and participants were concerned, and were not shown to have in any wise affected the result of the election. It was therefore determined not to put the community to the expense and annoyance of a new election, under the circumstances. It was not necessary in that case to pass upon the effect of the irregularities in precinct No. 9, known as "Lost Creek," and No. 6, known as "Carr's Fork." In the former opinion, above referred to, it was said: "As a rule, except in two of the precincts, the irregularities were trivial, and such as resulted naturally from holding elections with the insufficient accommodations afforded by country school houses. Except in Lost Creek precinct, which returned a vote of 76 to 9 in favor of contestant, there seems

to be no specific evidence of fraud or violence. In that pre-
cinct there seems to have been little pretense of propriety,
and in one of the other precincts, which showed an almost
equal disparity in the vote in favor of contestee, the pro-
ceedings were not very much better." It was found, how-
ever, that to disregard the returns from either of the pre-
cincts referred to would not have changed the result in
that case. Following the opinion, and adhering to what
was said in Napier v. Cornett, *supra* (the same facts appear-
ing in this record as in that), the irregularities in the other
precincts are not sufficient to invalidate the election therein.
But in this case it becomes necessary to consider and de-
cide the effect of the manner of conducting the election in
one of these precincts (No. 9 or No. 6), as this case depends
upon such determination. As to disregard the returns in
either of the precincts named is to affirm the judgment of
the circuit court, we will consider but one of them, viz.,
Lost Creek, or No. 9.

The record shows that in this precinct the election was
held in a small boxhouse, about twelve feet square. The
cracks between the boxing plank were not stripped or cov-
ered, and the planks had so shrunk apart as to widen these
cracks so that persons on the outside could see through
into the voting room. There does not appear to have been
a window to the room, and consequently the door was left
open during the whole day. The crowd approached to the
door, standing about it and in it, and peeping through the
cracks, although the law forbade them to be nearer than
fifty feet to the voting room, except the voter when voting.
The sheriff of election for a while tried to keep them away
the statutory distance, but they defied him, and paid
no attention to his commands. For more than half of the
day all effort to keep the crowd back was abandoned. The

Combs v. Eversole.

officers allowed "illiterates," about twenty or more, to be voted openly; that is, upon their statement that they could not read or write, the officers, or one of them (generally the clerk), marked such voter's ballot as it lay spread on the table, in the presence of all the officers of the election, and of the crowd, who could and did witness the details of the proceedings.    About thirty-five votes are shown to have been voted from "slips;" that is, the voter would come into the voting room with a slip of paper on which were written names of persons for whom he said he wanted to vote.    The clerk or other officer thereupon marked his ballot in plain view of the other officers and the crowd. Some fifteen voters or more the clerk or other officer accompanied to the voting booth, and there marked the ballots for them.    It is suggested that this is, or could easily have been, a sure method of effectuating bribery.    None of these voters were sworn as to their physical disability to mark their ballots. From time to time some of the officers of the election, the judges included, would absent themselves from the room; the voting continuing in their absence. One of the challengers and one of the judges were drunk.    The judge was shown to have been so drunk as to have been utterly disabled from discharging his duties throughout a great part of the day.    Neither of the judges could write or read. The one who was not drunk could not vote his own ballot, but it was marked for him by the clerk, with the same indifference as to its secrecy as many of the others.    None of the officers signed the certificate.    Two of them could not have written their names.    The others did not.    Neither of the judges participated in the count of the ballots. That important ceremony was performed by the Republican inspector and the Democratic challenger, neither of whom appears to have been appointed or sworn as required by law.

As an evidence of the probable looseness of the count and certificate, the man admittedly receiving the highest number of votes for magistrate was not certified any votes for that office, but was certified to have received the highest number of votes for the office of constable, for which he was not a candidate, and no votes had been cast for him for that office. There is evidence to the effect that one of the judges and the challenger of the opposite party early in the day had agreed "to vote that precinct" for a certain combination of candidates,—the ones who won. This fact is not, however, sufficiently shown to alone warrant a disregard of the result there. Upon the whole, a more flagrant disregard of the election laws by officers and voters generally can hardly be imagined. The policy of this court has been to overlook misfeasances of election officers in the conduct of elections, in giving effect to the will of the voters where it can fairly be gathered from the returns, leaving the question of punishment to the criminal jurisdictions. But to suffer an election to be held as was done in this precinct would be to abandon all safeguards provided by the Constitution and the Legislature for insuring a fair and equal election by secret ballot. Banks v. Sergent, 104 Ky., 849 (20 R., 1024), 48 S. W., 149.

The result in precinct No. 9 should have been disregarded. To do so is to award the certificate of election to appellee. The judgment of the circuit court is therefore affirmed.