CASE 85.—ACTION BY ROSSA WELLINGTON AGAINST THE
LOUISVILLE RAILWAY COMPANY. — March 18,
1910.

# Louisville Railway Co. v. Wellington

Appeal from Jefferson Circuit Court    (Common
Pleas Branch, Third Division).

WALTER P. LINCOLN, Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1. Exceptions, Bill of—Failure to File in Time.—Where a bill of
exceptions was filed without objection, and no motion made
to strike it out, the error, if any, in failing to file it in time
was waived.
2. Carriers—Actions for Injuries to    Passengers—Assault—Instructions—"Might."—In an action for assault on a passenger by fellow passengers, in an instruction stating the
duty of the conductor to protect the party assaulted if he
"anticipated that such assault might be made," it was not
error to use the word "might" instead of "would," since the
law requires that a carrier use the highest degree of diligence to protect passengers from assault which may be reasonably anticipated, and the word "might" is used in place
of "may" when referring to past time or a past event.
3. Damages—Personal    Injuries—Excessive    Damages.—Where
plaintiff, injured by being    assaulted by fellow    passengers
while on defendant's car, was still able to be up and around,
although not able to do her work as well as before, and
suffered from hemorrhages of her sexual organs, when it
was not her regular time to do so, and there was evidence
that these organs were out of place, and there was no cure
for her condition, a verdict for $7,125 was excessive.

PETITION ON REHEARING,—June 3, 1910.
1. Exceptions, Bill of—Settlement—Time—Objections—Waiver.
—After the expiration of the 60 days within which appel-

lant was entitled to file a bill of exceptions, the appellee is not required to be in court nor to object to the subsequent filing of a bill; and hence his failure to object to such filing is not a waiver of his right to object thereto.

2. Exceptions, Bill of—Filing—Time—Permitting Filing After Time.—Where a bill of exceptions is not filed within the time allowed and no extension of the time is granted, the right to file is lost, and an order permitting the bill to be filed after the expiration of 60 days is void.

3. Time—Computation.—Ky. St. section 1016, provides that, within 60 days after judgment becomes final the excepting party, unless further time be given him, shall prepare his bill of exceptions. Civ. Code Prac. section 342, declares that an application for a new trial, except for cases mentioned in section 340, etc., shall be made within three days after the verdict or decision is rendered, unless unavoidably prevented. Held, that since the computation is to be made from the date of the act done, viz., the rendition of final judgment, that day must be included in counting the time within which a bill of exceptions may be filed.

DAVID W. BAIRD, FAIRLEIGH, STRAUS & FAIRLEIGH and HOWARD B. LEE for appellant.

GEORGE WEISINGER SMITH for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Appellee, Rossa Wellington, instituted this action against the Louisville Railway Company, to recover damages for personal injuries. The jury returned a verdict in her favor for the sum of $7,125. From the judgment based thereon, the Louisville Railway Company appeals.

The following is a brief statement of the circumstances of the injury: White City is a place of amusement, located upon the banks of the Ohio river. During the summer season it is largely patronized by the citizens of Louisville generally. During the last week of the season it is patronized by the colored people of that city. On the night of September 8,

1907, appellee, Rossa Wellington, was helping her sister-in-law in conducting an ice cream stand. About 11:30 o'clock on that night she boarded a Greenwood avenue car standing in front of White City. She got on the front end of the car, and was accompanied by five or six white employes. She went into the car and took the fifth seat from the front, by the side of a negro man. The latter got up and left her the entire seat. At that moment a crowd of negroes rushed in from the rear end of the car, and a negro woman sat down beside appellee. The conduct of the negroes was disorderly. Their language was loud and foul. Some of them grabbed appellee by the arm and said: "This car belongs to us tonight." One woman said (referring to appellee): "Pull her out, drag her out." One of the negroes struck appellee. She was also thrown against the seat with some violence, and a bruise made on her side. During the trouble the conductor, according to the evidence for appellee, made no effort to protect her. The evidence for appellant is to the effect that he did all that he could in that direction. The conductor claims that he thought appellee was a colored woman, and that she was engaged in a fight with another colored woman. Finally the police were called, and they were directed by the conductor to take certain negroes off the car, and also appellee. Appellant assigns two grounds for reversal: First, error in the instruction; second, the verdict is excessive.

At the outset, however, it is insisted by appellee that this court has no right to consider the bill of exceptions because it was not filed within 60 days from the date of the judgment overruling the motion and grounds for a new trial. We deem it unneces-

sary to pass upon the question whether or not the bill of exceptions was, as a matter of fact, filed in time. Suffice it to say that it was filed without objection on the part of appellee, and that no motion was made, either in the court below or in this court, to strike out the bill of exceptions. That being the case, the error, if any, in failing to file the bill of exceptions within 60 days will be deemed to have been waived by appellee. Walling v. Eggers, etc., 78 S. W. 428, 25 Ky. Law Rep. 1565. It follows that we may properly consider the bill of exceptions.

It is first insisted by appellant that the court erred in giving instruction No. 1, which is as follows: "(1) If the jury believe from the evidence that the conduct of the negroes, by whom plaintiff claims to have been insulted and assaulted on the occasion in the evidence referred to, was such on defendant's car, and prior to the happening of the alleged assault, as would induce a reasonably vigilant and prudent conductor to have anticipated that such assault might be made, then it became the duty of such defendant's conductor, in the exercise of the utmost vigilance, to use all reasonable means to protect the plaintiff from indignity and assault from said negroes, and if you shall believe from the evidence that the defendant's conductor under such circumstances failed to use all reasonable means to prevent such indignity to or assault upon the plaintiff, and that by reason of such failure on the part of defendant's conductor the plaintiff sustained insult, assault, or injury from said negroes on the occasion in the evidence referred to, the law is for the plaintiff, and the jury should so find." The error relied upon is the use of the word "might" instead of the word "would." The rule applicable to such cases is

pointed out by this court in Kinney v. Louisville & Nashville R. R. Co., 99 Ky. 59, 34 S. W. 1066, wherein the court said: "Out of this obligation, and the doctrine that carriers of passengers are required to use the utmost care in the management of their trains in order to prevent or avoid injury to their passengers, arises the rule that makes it the duty of carriers to exercise the highest practicable degree of care and diligence in protecting and guarding their passengers from violence and assaults, from whatever source, which may be reasonably anticipated or naturally expected to occur under the circumstances of the case and the condition of the parties.   *   *   *" It will be observed that the foregoing rule  exacts of the carrier the highest practicable degree of care and diligence in protecting and guarding its passengers from violence and assaults,  from  whatever source, which may be reasonably anticipated or naturally expected to occur under the circumstances of the case and the condition of the parties.   In other words, the court, in speaking of the present duty of the carrier uses the word "may."   It,  therefore, follows that where an instruction is designed to cover a past event (that is, to set forth the duty of the carrier with reference to something that has already taken place), the use of the word "might" is altogether proper.   In other words, "may"  and "might" have practically the same meaning when construed with reference to the time of the occurrence.   "May" is proper when used with reference to the present, in speaking of  a  future  event; "might" is likewise proper when used with reference to a past time, and concerning an event thereafter to take place, but which had already taken place at the time the instruction was given.

We shall next consider the question whether or not the damages awarded are excessive. Appellee's injury occurred on September 8, 1907. Three days after she claims to have been hurt, she called on Dr. Schwankhaus, a physician living not far from her in the western part of the city. She made no complaint of the fact that she had been injured on a street car. About 10 days thereafter she again called on Dr. Schwankhaus and he then made an examination of her. She complained of suffering from headaches and flooding. Dr. Schwankhaus was never called to her home to treat her. Whenever she needed attention, which was at rare intervals, she went to Dr. Schwankhaus' office. At the time she called on Dr. Schwankhaus she was very nervous. Her temperature was above normal, and there was a slight acceleration of her pulse. She had a black and blue mark on her groin. The flooding occurred when her periods were not due. Sometimes the flooding ceased for three or four days at a time, or maybe for a week; it then returned. She had not been ill prior to the time of her injury. Dr. Schwankhaus testified that he had treated appellee on different occasions since the injury, but had not seen her often. When she first came to his office, on the 10th or 11th of September, she said she was suffering from hemorrhage; that it was not her periods. He advised her to take certain medicines he gave her for the purpose of stopping the flow of blood, and told her to go home and remain quiet and not to do any work, and to report back to him when the hemorrhage ceased, or when her medicines gave out. She came back to him in 10 or 12 days. Her hemorrhage had not then stopped entirely, but sufficiently for him to make an examination. He made an ex-

amination without removing her clothing, or examining her skin. The examination was digital. He found blood coming through the normal opening in the uterus. It was dropped back to the left side, and the left tube was distended. When he touched it he could tell there was fluid or liquid in it, and that was where the blood was coming from. He then told her she could not get well unless she was operated upon. After examining her heart he did not think it was safe to operate upon her. At the time of the trial, however, he had not examined her heart for several months. He gave her more medicine, and she returned in about four weeks. She reported the same condition still existed. Her temperature was still above normal, and her pulse high. She complained of pain in her back and abdomen. On cross-examination the witness stated that he had not examined her for several months. He had only taken her temperature and pulse, and did not know personally whether the hemorrhages continued or not. All that he knew was what appellee told him. In his opinion, however, she was still suffering from the hemorrhages. Dr. Dudley S. Reynolds testified that he made an examination of appellee in December, 1908, some 14 months after the injury occurred. This was the only examination he made. The examination disclosed a state of profound nervous shock, great frequency and irregularity of pulse and breathing, and elevation of temperature. Appellee had a swelling with great tenderness in the right side of the abdomen. Her right ovary and the womb had been torn loose from their attachments; the womb was lying horizontal in the pelvis, and the right ovary glued to it by inflammatory adhesions, about two inches in diameter, whereas it should not have been

more than three-quarters of an inch in diameter. This was the sum total of the disability he discovered. He further stated that appellee's condition was most likely—almost surely—due to mechanical violence of some kind, and the fact that she was injured on a street car would afford a reasonable explanation for her condition. He further stated that there was no cure for appellee's condition.

From the foregoing it will be seen that, while appellee claimed not to be able to do her work as well as she formerly did, it is not shown that she was even confined to her bed, or confined to her home for any length of time because of the injury. While there is some doubt as to whether or not her injury produced the hemorrhages of which she complains, yet, accepting this contention as true, and that she occasionally suffers from hemorrhages when it is not her period, we are constrained to the opinion that a verdict of $7,125 under such circumstances is so excessive as to strike the mind that it was due to prejudice or passion on the part of the jury. As it was shown that she was treated in a rough and humiliating manner by a lot of drunken and disorderly negroes, this fact was sufficient to, and doubtless did, arouse the passion of the jury, and thus cause them to award her such a large verdict. That being true, we conclude that appellant is entitled to a new trial.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.

OPINION OF THE COURT BY COMMISSIONER CLAY.— Rehearing granted. Order of reversal vacated and judgment affirmed.

Upon reconsideration, we conclude that we were in error in holding that appellee's failure to object

to the filing of the bill of exceptions, or to make a motion to strike out the bill of exceptions, was a waiver of the error of the court in permitting the bill of exceptions to be filed after the expiration of 60 days. This is not a case where the party complaining that the bill of exceptions was not filed in time was present in court when an extension of time was granted, or the bill was filed, and made no objection thereto. Walling v. Eggers, etc., 78 S. W. 428, 25 Ky. Law Rep. 1563. Nor is it a case where a party consents or is present, and does not object to an extension, and thus induces his adversary to delay the filing of the bill of exceptions. Hill's Adm'r v. Penn Mutual Life Insurance Co., 120 Ky. 190, 85 S. W. 759, 27 Ky. Law Rep. 567; Vertrees v Head & Matthews, 127 S. W. 523. Appellee was not required to be in court after the expiration of the 60 days; therefore, he was under no legal duty to object to the filing of the bill. Being under no legal duty to object, his failure to object will not constitute a waiver. If, as a matter of fact, the bill of exceptions was not filed within the time allowed, and no extension of the time was granted, the right to file it was lost, and the order made, permitting the bill to be filed after the expiration of 60 days, was void. Bailey v. Villier, 6 Bush, 28; United States Fidelity, etc., Co. v. Herzig (Ky.) 124 S. W. 279; Kentucky Land Company v. Reynolds, 58 S. W. 533, 22 Ky. Law Rep. 623; Scott, etc., v. Burrows, 13 Bush, 450.

The next question to be determined is: Was the bill of exceptions filed in time? The motion for a new trial was overruled on March 13, 1909, and appellant given 60 days time within which to file the bill of exceptions. The bill was filed on May 12,

1909. Section 1016, Ky. St., provides that within 60 days after the judgment becomes final the party excepting shall, unless further time be given him, prepare his bill of exceptions. Section 342, Civ. Code Prac., provides that an application for a new trial, except for the cause mentioned in section 340, etc., "shall be within three days after the verdict or decision is rendered, unless unavoidably prevented." It will be observed that the language of the statute is substantially the same as that contained in the Code. In construing the Code provision, this court has always held that the day on which the verdict or decision is rendered shall be counted as one of the days. The rule applicable to such cases is well stated in the case of Chiles v. Smith, 13 B. Mon. 460, where the court said: "The rule in regard to the computation of time seems to be that, when the computation is to be made from an act done, the day in which the act was done must be included, because, since there is no fraction in a day, the act relates to the first moment of the day in which it was done. But when the computation is to be from the day itself, and not from the act done, there the day in which the act was done must be excluded. Bellaris v. Hester, 1 Lord Raymond, and the authorities cited." The statute in force at the time that opinion was rendered provided that no writ of error should be sued out "except in three years next after the judgment or final decree, and not thereafter." Following the principle of law above announced, the court held that the day on which the final judgment or decree was entered should be counted. This rule has been approved and adhered to in the following cases: Batman v. Megowan, 1 Metc. 546; Mallory v. Hiles, 4 Metc. 55; Long v. Hughes, 1 Duv. 387;

White v. Crutcher, 1 Bush, 473; Wood v. Commonwealth, 11 Bush, 221; Handley v. Cunningham, 12 Bush, 403; Mooar v. Covington City Nat. Bank, 80 Ky. 307; Commonwealth v. Shelton, 99 Ky. 122, 35 S. W. 128, 18 Ky. Law Rep. 30; Irwin v. Irwin, 105 Ky. 637, 49 S. W. 432, 20 Ky. Law Rep. 1761; Board of Councilmen v. Bank, 105 Ky. 812, 49 S. W. 811, 20 Ky. Law Rep. 1635; Combs v. Eversole, 114 Ky. 225, 70 S. W. 638, 24 Ky. Law Rep. 1063; Henry Voght Mach. Co. v. Iron Works, 66 S. W. 734, 23 Ky. Law Rep. 2164; Smith v. Lawler, 78 S. W. 851, 25 Ky. Law Rep. 1782; Newton v. Ogden, 126 Ky. 101, 102 S. W. 865, 31 Ky. Law Rep. 549.

In the case before us the computation is to be made, not from the day itself, but from the act done. The act done was the overruling of the motion for a new trial. The bill of exceptions could have been filed upon that day; therefore, that day should be counted. Counting March 13th, the day on which the motion for a new trial was overruled, the bill of exceptions was not filed until the sixty-first day; therefore, it was not filed in time. Not having been filed in time, it cannot be considered by this court. That being true, the only question before us is whether or not the pleadings support the judgment. Of this there can be no question.

For the reasons given, a rehearing is granted, the order of reversal set aside, and the judgment affirmed.