## Louisville & Nashville R. R. Co. v. Brewer.

(Decided February 27, 1912.)

### Appeal from Muhlenberg Circuit Court.

Lunatic on Train—Frightening Passenger—Liability.—There can be no recovery of damages by a woman who was frightened on the cars by a lunatic in the charge of an attendant, when there had been no previous conduct of the lunatic sufficient to put the carrier on notice that her presence on the cars endangered other passengers.

BENJAMIN D. WARFIELD and BROWDER & BROWDER for appellant.

R. Y. THOMAS, JR. for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

On May 24, 1908, Mrs. Myrtie Brewer, with five children, the oldest of whom was about ten years old, was a passenger on a train of the Louisville & Nashville Rail-

road Company from Cleaton to Drakesboro. When she got off the train at Drakesboro she was white, nervous and weak. She went to bed on going home and remained in bed about two weeks. Ninety days afterwards she was confined, and continued to have weak spells after her confinement. She brought this suit against the railroad company for the injury to her health which she charged was due to her being frightened by a lunatic on the train. On the trial of the case she recovered $500. The railroad company appeals.

The distance from Cleaton to Drakesboro is four miles. The running time of the train between the two points is thirteen minutes. When Mrs. Brewer got on the train, a lunatic girl in charge of a lady attendant was sitting about the middle of the coach, facing the door at which Mrs. Brewer entered. Mrs. Brewer took a seat near the front of the coach, facing the lunatic, and rode backwards to Drakesboro, her children being about her. She makes this statement as to the lunatic: "She was talking and laughing, and when the train started she screamed and hallooed like she was in distress. She screamed and hallooed very loud. She would scream and say, 'Take him away, don't let him to me.' And she would laugh and talk and whistle and then scream again."

Another witness who was introduced for the plaintiff makes this statement as to the lunatic: "When I first saw her she was sitting by the window, singing and whistling, and then she seemed to be weeping or moaning for some one. It seems she thought some one was coming to her, and she hallooed to them to take him away." Another witness for plaintiff makes this statement as to the lunatic: "She was talking and whistling and kind of giggling, and then she would rail out and say she was George R. Garrett's daughter, or something to that effect. She was talking loud. She really didn't scream any during that time." The lunatic at no time left her seat. She was at all times in charge of her attendant, who was on the seat by her. She at no time was nearer Mrs. Brewer than when Mrs. Brewer took her seat in the car, probably about one-fourth of the car away from her. She did not address Mrs. Brewer at any time or make any effort to hurt her or any one else. The lunatic was at no time dangerous, boisterous or disorderly. Mrs. Brewer sat facing the girl, and the trouble that ensued with her seems to have been due to her being pregnant

and to the fact that thus the unnatural appearance and doings of the lunatic made a deep impression upon her mind, as often happens in the case of pregnant women. Mrs. Brewer made no complaint to the conductor or to any officer of the train. None of them knew that Mrs. Brewer was pregnant or that the lunatic was giving her any inconvenience.

In II. Hutchinson on Carriers, section 980, discussing the liability of a carrier to a passenger on account of the conduct of other passengers on the cars, the learned author says:

"The negligence for which the carrier is held liable is not the wrong of the fellow-passenger or the stranger, but it is the negligent omission of the carrier's servants to prevent the wrong from being committed. In order that such omission may constitute negligence, there is involved the essential element that the carrier or his servants had knowledge, or with proper care could have had knowledge, that the wrong was imminent, and that he had such knowledge or the opportunity to acquire it sufficiently long in advance of the infliction of the wrong upon the passenger to have prevented it with the force at his command."

The rule thus stated has often been applied by the courts in cases where fellow-passengers were obscene, drunk, disorderly, or of unsound mind; but we have found no case where the carrier has been held liable where the conduct of the passenger was not sufficient to apprise a person of ordinary prudence that danger was to be anticipated; and while peculiar care is due to persons . who are sick or infirm, only the care required in the case of persons in ordinary health is demanded of the carrier where he is not informed of the infirmity of the passenger and has no reason to apprehend the danger to him. (6 Cyc., 598, 603; Mo. Pac. R. R. v. Evans, 71 Tex., 361; Spohn v. Mo. Pac. R. R. Co., 87 Mo., 74; Tall v. Baltimore Steam Packet Co., 90 Md., 248; Fritz v. R. R. Co., 132 N. C., 829; Felton v. Chicago, &c., R. R. Co., 69 Ia., 577; Franklin v. Railroad Co., 74 S. C., 332; Norris v. R. R. Co., 84 S. C., 15.) Our own opinions are to the same effect. In I. C. Railroad Co. v. Cruse, 123 Ky. 463, a passenger complained because she was not helped to leave the car at the station. It was held that, as she did not ask assistance and the company had no notice of her infirmity, she could not recover, the steps and platform being so reasonably

lighted that the ordinary traveler could alight from the train in safety. The same rule was laid down in Adams v. Louisville & Nashville R. R. Co., 134 Ky., 620, where a passenger was injured by the fall of a valise from the rack overhead; it being held, however, in that case that the facts were sufficient to apprise a person of ordinary prudence of the danger to the passenger.

A carrier can not absolutely refuse transportation to insane persons. These people must be carried to the asylums, and they can only be carried on the trains. Justice to them as well as humanity requires that they should be admitted to the trains, unless their presence will endanger others, and, as has been well said, in the case of these unfortunates, who are at best involuntary passengers and not responsible for their conduct, more allowance must be made than in the case of ordinary passengers. There was nothing in the conduct of this poor girl that would have justified the railroad company in refusing to admit her to the train, or that would have justified the railroad company in expelling her from the train at a station along its road after she had been admitted to the train. The company had a right to require that she be in charge of an attendant, and it was its duty to see that she did not hurt anybody. But she was not a violent lunatic. There was no danger of physical hurt to the other passengers; it is said the child born afterwards to Mrs. Brewer acts like the lunatic, but the effect on Mrs. Brewer was simply an accident, due, perhaps, more than to any other cause, to the fact that she sat facing the lunatic, and so the lunatic's image became impressed upon her mind.

In Owens v. Railroad Co., 63 L. R. A., 946, the lunatic was dangerous and violent, and it was held that the company had sufficient reason for not taking him on the train. In Myer v. St. Louis, &c., R. R. Co., 54 Fed., 116, the lunatic on the train killed a fellow-passenger but it was held that the company was not responsible because it had no reason to apprehend danger from him until he suddenly became insane. We do not see that there is anything in either of these cases not in keeping with the general current of authority.

We therefore, conclude that there was no negligence on the part of the defendant, and that the court should have sustained its motion for a peremptory instruction to the jury to find for it for the reasons stated. This

conclusion makes it unnecessary for us to consider the other questions raised. Judgment reversed and cause remanded for further proceedings consistent herewith.