## Mahan Jellico Coal Company v. Bird.

(Decided January 12, 1916.)

### Appeal from Whitley Circuit Court.

1. **Jury—Impanelling—Error.**—Circuit courts are without authority to discharge a second jury panel after one week's service and

impanel a new jury, and where a party objects to a trial by a new jury thus impaneled and moves to discharge the panel, a judgment based on a verdict rendered by such jury will be reversed.

2. Master and Servant—Personal Injury to Servant—When Master Not Liable For—Peremptory Instruction.—In an action brought by a servant to recover damages from the master for an injury caused by the alleged negligence of the latter in furnishing him a mule for hauling cars in a mine that was not reasonably safe for such work, in order to authorize a recovery it is necessary for the servant to prove: first, that the mule was vicious or dangerous; second, that the master either knew or by the exercise of ordinary care could have known thereof; third, that appellee did not himself have such knowledge and could not have acquired it by the exercise of ordinary care on his part. And where, as in this case, it was conclusively shown by the evidence that if the mule by which the servant claimed to have been injured was not reasonably safe for use that fact was known to him, but was not shown to have been known to the master, or that the latter had an opportunity, by the exercise of ordinary care, to have discovered it; and further, that the servant's injuries were caused by his own negligence in unnecessarily jumping from a coal car when the danger of doing so was obvious to one of ordinary intelligence situated as he was, there should have been a peremptory instruction directing a verdict for the defendant.

TYE, SILER & GATLIFF for appellant.

ROSE & POPE for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This action was brought by the appellee, R. C. Bird, to recover of the appellant, Mahan Jellico Coal Company, damages for personal injuries sustained, as alleged, through its negligence, first, in furnishing him an uncontrollable and dangerous mule for hauling its cars, of which he was in charge; second, in so constructing the car tracks in its mine as to leave at the place of the accident only four inches space between the mine wall and passing cars, when there should have been at least eighteen inches of such space. The answer of the appellant specifically denied the acts of negligence charged and pleaded contributory negligence on the part of appel lee. The trial resulted in a verdict awarding appellee $750.00 damages. Appellant was refused a new trial and has appealed from the judgment entered upon that

verdict. A reversal is asked upon the grounds that the trial court erred (1) in impanelling the jury and failing to discharge it on appellant's motion; (2) in failing to give a peremptory instruction directing a verdict for appellant; (3) in instructing the jury.

It appears from the bill of exceptions that the parties to this action were compelled to choose a jury from the third panel drawn and selected by the court at and during its September term, 1914. In other words, the court had not only discharged the first regular jury panel after one week's service, but also the second panel after one week's service, and had impaneled a third jury for the third week of the term. This case was tried by twelve jurors selected from the third jury. Upon the calling of the case for trial appellant moved to discharge the third panel from which the parties were required to select a jury to try the case, but the motion was overruled. This ruling of the court was error. In C., N. O. & T. P. Ry. Co. v. Strunk's Adm'x., 167 Ky., 340, we said with respect to the question here raised:

"We have had occasion to consider this question in several cases and the conclusion was reached that trial courts were authorized to discharge only the first regular panel of a jury after they had served one week and empanel another jury, and were without authority to discharge a new jury thus empaneled after a week's service and empanel another jury for the succeeding week, and continue this practice for each week of the term. We further held that parties litigant are entitiled to a trial by a jury empaneled according to the statute, and where the question was properly raised it was prejudicial error to refuse to discharge the jury where the method provided by the statute for empaneling a jury was substantially disregarded. L. & N. R. Co. & Curt Jones v. Owens, &c., 164 Ky., 557; L. & N. R. Co. v. Messer, 165 Ky., 506; L. & N. R. Co. v. King, 161 Ky., 324. We regard as without merit the contention that defendants waived their right to object to a trial by the new panel because they failed to object to the discharge of the preceding panel. Not being required to be in court when the preceding panel was discharged, they were under no obligation to object, and their failure to do so did not constitute a waiver. Louisville Railway Company v. Wellington, 137 Ky., 719."

As the judgment must be reversed for the error referred to, we deem it advisable to determine whether or not the peremptory instruction asked by appellant should have been granted, and the decision of the latter question will require consideration of the evidence introduced on the trial. It is his contention that at the time of receiving his injuries the mules attached to the three cars loaded with slack he was hauling from appellant's mine were running away, and that in attempting to jump from the front car for the purpose of spragging and stopping the cars and mules, the narrowness of the space between the railroad track and wall of the mine, caused him to strike the wall and be thrown so close to the rail of the track on that side that his hand fell thereon and was run over by one or more of the wheels of the front car, thereby cutting off two of his fingers and otherwise mangling his hand.

It fully appears from the evidence that the wall of the mine on the side appellee jumped from the car was at a point where there was a bend in the entry and track, which required that the track be located nearer to the wall on that side than elsewhere in that part of the entry, but on the opposite side of the track there was much greater space between the wall and track and a beaten path upon which he could have jumped with less danger than on the other side. It also appears from the evidence that persons operating cars in the mine were not required or accustomed to get off of them or to spragg cars at the place of the accident, and that if the mules were running at the time of the accident at the speed claimed by appellant, it would have been dangerous to jump from the car as he did on that occasion, even if he had jumped on the opposite side of the track. According to the evidence, appellee had had an experience of five years as a driver in mines. He had worked in appellant's mine for at least three months before he was injured, and much of that time had worked the mule, known as Sam, to whose viciousness he attributes his injuries. He testified that the mule was reasonably safe and manageable when driven alone, but that when driven with another mule his viciousness would sometimes manifest itself in refusing to pull, in kicking and in attempts to run away; and perhaps two other witnesses testified to the same qualities in the mule, but no witness testified that such qualities of viciousness of the mule were known

to appellant or its foreman in charge of the mine. We think it fairly apparent from the evidence that appellee knew more of the disposition and habits of the mule than any other employe of appellant, as he had been working him for three days with another mule before the accident occurred. It is true, he testified that the mule on the afternoon of the second day became somewhat unruly, and that on the morning of the third day, when starting to work, he informed appellant's foreman he did not wish to work the mule, and that the latter told him to take the mule and be careful, and that he then took it without further objection. This statement of the foreman did not amount to a representation or assurance of the safety of the mule, but it is evident therefrom that whatever complaint was made by appellee of the mule did not impress the foreman with the belief that he was unsafe as a work animal. One Delbert Owens, another employe of appellant, was with appellee when his injuries were received, it being his duty to assist appellee in operating the cars and unloading the slack hauled therein. Owens testified that it was also a part of his duty to help appellee in case of a wreck, and that at the time the latter received his injuries the mules were not running away, but were going in a fast trot, but no faster than he had often driven mules and seen them driven in the mine. Owens did not jump from the car, as was done by appellee, but seemed to have retained his presence of mind sufficiently to pull out the pin which attached the harness worn by the mules to the front car, thereby separating the mules from the car. This pin is so shaped that it can be pulled out with ease, no matter at what speed the cars might be going or what load they are carrying. After pulling out the pin Owens stopped the mules by telling them to "whoa," and when stopped they had gone but a short distance from the car. It conclusively appears from Owens' testimony and that of appellee that the latter made no attempt to pull the pin, but instead of doing so jumped from the car on the side of the track where there was very little room and where no driver had been accustomed to sprag the wheels of the cars. It also appears from the admissions of appellee and the testimony of Owens that he whipped the mule Sam immediately before he jumped from the car and was injured, and other witnesses testified that

the mule was a high-spirited animal and would not stand whipping.

Giving to the evidence all the weight to which it is entitled, it fails to show that appellant or its mine foreman had such knowledge of the qualities of the mule as would have enabled it or him to know that it was a vicious, unsafe or dangerous animal to work in the mine. Moreover, if the mules were, as claimed by appellee, running away, he ought to have known, as was known to others who testified in the case, that it was impossible to sprag the wheels of the car, and, familiar as he was with all parts of appellant's mine, he must also have known that the nearness of the wall to the track at the place of the accident made jumping from the cars at that point extremely dangerous.

In order to recover, it devolved upon appellee to show: first, that the mule was vicious or dangerous; second, that appellant either knew or by the exercise of ordinary care could have known thereof; third, that appellee did not himself have such knowledge and could not have acquired it by the exercise of ordinary care on his part. If the mule was vicious or dangerous, it is apparent from appellee's own testimony that he knew it, but we think the evidence insufficient to show that appellant or its foreman had such knowledge. It was not even claimed by appellee that at the time he informed appellant's foreman he did not wish to work the mule that he then told him he had attempted to run away with him the day before, or that he was a dangerous animal, and what the latter said to him indicated no knowledge on his part of the dangerous qualities of the animal and gave no assurance to appellee that it would be safe for him to work the mule. It is not apparent from the evidence that appellant owed appellee any duty to furnish him space or room to sprag the wheels of cars, except at places where he would reasonably be expected to do such spragging, and the place at which he was injured was not a place at which such spragging had at any time been done.

The situation presented by the record is not one in which an emergency existed that justified appellee in jumping from the car, either to sprag the wheels or for any other purpose. Besides, he does not claim that jumping from the car was necessary to save his life or prevent injury to his person from harm, but was to en-

able him to sprag the car. Therefore, his act in leaving the car in the manner attempted cannot be excused on the ground that it was a mere mistake of judgment. If he had remained on the car, as Owens did, and disengaged the mules from the car by removing the pin, as was done by Owens, appellee would not have been injured; or if he had jumped from the car to the path on the opposite side of the track, which he could, as well have done, the act would have been attended with little or no danger, and if the spragging of the wheel was at all practicable he might better have accomplished it from that side of the track than from the one to which he jumped. Appellee was familiar with the place of the accident, for he passed it many times every day of the three months of his work in appellant's mine. So the narrowness of the space between the car track and wheel on the side he jumped was bound to have been well known to appellee, as was also the danger attending the jump. One cannot cast himself upon a plainly visible or to him well known and dangerous obstruction, and, if injured thereby, be allowed to recover. The close proximity of the wall to the track made it a plainly discernible obstruction and the danger of attempting to jump between it and the track was so apparent that a person of ordinary prudence ought not have failed to appreciate it; therefore, in jumping at that place in the manner that he did appellee must be presumed to have understood the risk he ran and the probable consequences. In other words, upon the facts established by his own evidence the trial court should have decided, as a matter of law, that neither the speed at which the mules were going nor the nearness of the wall of the mine to the car track was the proximate cause of appellee's injuries, but that they were caused by his own negligence. It therefore follows that the failure of the court to give the peremptory instruction asked by appellant was error.

For the reasons indicated the judgment is reversed and cause remanded for a new trial consistent with the opinion.