## Payne, Agent v. Moore.

(Decided November 14, 1922.)

### Appeal from Lincoln Circuit Court.

1. Carriers—Actions for Injuries to Passengers—Assault—Liability of Carrier.—A carrier is not liable to a passenger who is the victim of a sudden and unexpected assault by a fellow passenger which could not have been foreseen and prevented by the utmost care on the part of those in charge of the train.

2. Carriers—Actions for Injuries to Passengers—Assault—Liability of Carrier—Sufficiency of Evidence.—Evidence in a passenger's action for assault held not to show any negligence on the part of the carrier in failing to protect the passenger.

K. S. ALCORN and JOHN GALVIN for appellant.

L. L. WALKER and G. D. FLORENCE for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

This is an appeal from a judgment awarding appellee $1,500.00 damages for personal injuries which she received while a passenger on a Cincinnati, New Orleans & Texas Pacific train, then operated by the Director General of Railroads.

The refusal of a directed verdict is the principal ground urged for reversal.

The facts are these: Mrs. Moore and her daughter, Mrs. Peck, were on an accommodation train going from Cincinnati to McKinney, Ky. They were both seated in the front end of the ladies' coach. Mrs. Moore faced

the engine, while Mrs. Peck sat opposite her with her face toward the rear of the train. A young man, who had boarded the train at Erlanger, a station about thirty miles away, and who had just come into the ladies' coach, got into a fight with someone about the middle of the coach. Another passenger by the name of Hale separated the combatants, and while taking the young man down the aisle for the purpose of ejecting him, the young man struck Mrs. Moore in the face, severely injuring her. According to Mrs. Moore's account of the affair, the train was slowing down for Williamstown. She heard a "sort of a racket" and thought the passengers were getting ready to leave the train, but soon saw that they had hold of a man and were coming with him. In a very short time he passed and struck her. A few minutes before that the conductor had passed through going toward the engine. So far as she knew, none of the employes were in the train at the time. Mrs. Peck says that she first heard a noise, "a kind of rattling," which she thought was due to the fact that the passengers were getting ready to leave the train at Williamstown. Just about the time she turned back to where her mother was, her mother was struck. About a minute before the injury, she saw a man, she supposed was the conductor, going toward the front of the train. From his appearance, the man who struck her mother was either drunk or crazy. They were attempting to put the man off at the time. It was just about the time the trainman came in and announced the station that she heard the racket.

For appellant the conductor testified that he saw the boy on the train while he was riding in the smoker. He was with another boy and they were perfectly quiet. There was nothing in his demeanor, appearance or conduct to indicate that he was drinking or crazy. When the train pulled into Williamstown, the conductor was on the front end of the train where his duty required him to be. The last time he was in the smoking compartment was when the train was leaving Dry Ridge, three miles from Williamstown, and there was no disorder of any kind in the coach. The flagman testified that he saw the boy who struck Mrs. Moore several times as he passed through the smoking compartment, and there was nothing disorderly in his conduct or appearance. About a half mile before they reached Williamstown, he called the station and opened up the vestibule door for

the passengers to alight. At that time no trouble of any kind had occurred. The first he knew of the trouble was after the train had stopped, and he had helped three or four passengers off when two or three men appeared on the platform holding a boy. On asking what was the matter, one of the men who had hold of the boy said, "He is crazy or something. He has jumped up here trying to whip everybody in the coach." The flagman took the boy in charge and turned him over to a peace officer. Mrs. David Caldwell of Williamstown, who was in the coach with Mrs. Moore, said that about the time the train was back of the court house she noticed the boy in a scuffle with another passenger behind him. This was the first she knew of any racket, and the first time her attention had been called to the passenger. When the train got near to the depot at Williamstown, he struck Mrs. Moore. From the time she first heard the racket in the car until Mrs. Moore was hurt, it was not more than a minute or so. She did not observe any misconduct on the part of the boy prior to the racket and did not see any member of the crew in the coach at the time the trouble occurred. Mrs. Dora Sims, who also lives at Williamstown, and was seated in the back part of the ladies' coach near the smoking compartment, testified that she saw the boy and his traveling companion after they got on at Erlanger. They were laughing and talking and having a good time as they went down the aisle. There was nothing to indicate that he might become disorderly. The boy and his companion then went into the smoking compartment and she did not see them again until Williamstown was called. He then came into the coach and, when near the center, she noticed him lean over against a passenger who pushed him away. The boy and the passenger then got into a scuffle, when they were separated, and the boy walked over to the front end of the car, when he struck Mrs. Moore. From the time he first got into the scuffle until Mrs. Moore was struck by him possibly a minute elapsed. She saw no trainmen in the coach after Williamstown was called. Mrs. Hallie Sharp, another passenger who was seated close to the front end of the coach, testified that she got off at Williamstown with her sister and three little children. She heard no commotion at all in the coach before she got off. She had been a passenger from Walton, a station north of Williamstown, and neither saw nor heard any misbehavior in the coach while she was on it.

The first she knew of the trouble was after she got off the train and saw the men on the platform holding a boy. C. B. Hale, who was seated near the middle of the coach, testified that about a half minute or minute before Mrs. Moore was struck, and while the people were standing up getting ready to get off at Williamstown, two young people came down the aisle of the coach from the rear and began scuffling. He got up and separated them, and taking the boy by the shoulders, shoved him down the aisle to put him off the train. The boy did not attempt to hit anyone after he seized him, or to offer any resistance, but just as he got near the front of the car, the boy suddenly jerked loose and hit Mrs. Moore. He then grabbed the boy and shoved him ''almost head front down the aisle,'' and handed him down the steps to the flagman, who was assisting the passengers off. When his attention was first attracted to the commotion in the car, the train had already stopped at Williamstown, and there were no trainmen in the coach. There was no disorder nor trouble prior to the scuffle, and the trouble lasted only as long as it took him to walk as fast as he could walk to the front end of the car with the boy. He did not detect any odor of whiskey on the boy, who acted more like a crazy man than anything else.

The law applicable to a case of this kind may be stated as follows: Carriers are not insurers of the absolute safety of their passengers, or of their entire immunity from the misconduct of fellow passengers, though there is an implied obligation, growing out of the contract between the carrier and the passenger, that the former shall afford to the latter reasonable protection and immunity from the insults, violence, and wanton interference of fellow passengers, intruders, or the carrier's servants. Out of this obligation and the doctrine that carriers of passengers are required to use the utmost care in the management of their trains in order to prevent or avoid injury to their passengers, arises the rule that makes it the duty of carriers to exercise the highest practicable degree of care and diligence in protecting and guarding their passengers from violence and assaults from whatever source, which may be reasonably anticipated or naturally expected to occur under the circumstances of the case and the condition of the parties; and where a passenger is injured because of the carrier's failure to perform this duty, the carrier is re-

sponsible. Kinney v. Louisville & N. R. Co., 99 Ky. 59, 34 S. W. 1066; Louisville Railway Co. v. Wellington, 137 Ky. 719, 126 S. W. 370, 128 S. W. 1077. But if the passenger has been assaulted by a · fellow passenger under circumstances that could not have been reasonably anticipated by the carrier in time to prevent the assault, the carrier is not liable. 4 R. C. L. 1186; Louisville R. Co. v. Brewer, 147 Ky. 166, 143 S. W. 1014, Ann. Cas. 1913D 151, 39 L. R. A. (N. S.) 647. In the case at bar it was not shown that the assault was committed in the presence of the conductor or brakeman or any other employe. On the contrary, it appears that the assault was committed when the train was slowing down for the station and at a time when the brakeman and conductor had gone to other parts of the train preparatory to the performance of the duties required of them when the station was reached. The case, therefore, turns on whether or not the passenger who committed the assault had been guilty of any prior misconduct which would induce a reasonably vigilant and prudent conductor or brakeman to anticipate that such an assault might be made. Neither plaintiff nor any other witnesses in the case testified to any prior misconduct. The nearest approach to anything of the kind was the evidence of Mrs. Sims, who stated that the assaulting passenger was "laughing and talking and having a good time," and clearly this was not such misconduct as would justify the inference of probable danger to the other passengers. Indeed, all the witnesses say that the passenger was quiet and orderly, and there was nothing in his conduct to indicate that he would later become disorderly. But it is argued by counsel for plaintiff that the man was crazy drunk, that he did not become so in the twinkling of an eye and there must have been some prior indication of his condition which could have been discovered by the exercise of the highest degree of care. The difficulty with this contention lies in the fact that there is no evidence on which to base it. It does not clearly appear whether the passenger was crazy or drunk. If crazy, he might have become so unexpectedly. If drunk, the concoction of which he partook might not have reached the zenith of its power until the assault was actually made. At any rate, no presumption of prior misconduct can be indulged in the face of the positive testimony of every witness who saw the passenger, that he was quiet and orderly. That being true, the case,

as made out by the evidence, is simply one where the plaintiff was the victim of a sudden and unexpected assault which could not have been foreseen and prevented by the utmost care on the part of those in charge of the train. Hence, the defendant is not liable, and the trial court should have sustained its motion for a directed verdict.

Judgment reversed and cause remanded for a new trial consistent with this opinion. •