## Louisville & Nashville Railroad Company v. Lindsay.

(Decided January 22, 1926.)

### Appeal from Logan Circuit Court.

Carriers—Carrier Held Not Liable for Abusive Language Towards Prospective Passenger by Freight Yard Employee Acting in Personal Matter.—Carrier held not liable for conduct of freight yard clerk having no connection with passenger service, who, acting wholly on his own personal responsibility and in relation to a personal matter, used abusive and insulting language and threats against prospective passenger standing on depot platform.

WOODWARD, WARFIELD & DAWSON and S. R. CREWDSON for appellant.

E. J. FELTS for appellee.

Opinion of the Court by Turner, Commissioner—Reversing.

On the 22nd of October, 1922, appellee, whose home was at Elkton, Ky., drove from there to Russellville to catch the early morning train for Louisville. The train was scheduled to leave Russellville about 7:45, and was on time. About ten minutes before the train was to leave, appellee went to the depot, bought his ticket for Louisville, took his hand baggage and walked out on the platform in front of the station, and stationed himself at or about where he expected to board the train. While so situated, and engaged in talking to acquaintances in the presence of others he was accosted by one Cornelius, who asked him if his name was Lucian Lindsay, and being informed it was, the latter told appellee he had charged him with stealing his dog, whereupon appellee said, in substance, he had not so charged, but that he had information that his brother had seen Cornelius taking his dog into his machine, and that the dog had thereafter been found in Cornelius' possession. This evoked from him the use of some very violent and abusive language, the effect of which was that anybody who said he had stolen the dog was a "God damn lying son of a bitch." Following this there was some strong and unbecoming language used by each of them, but neither struck or offered to strike the other. When the train came in a few minutes, appellee boarded it and went to Louisville.

Cornelius was employed by appellant as yard clerk in the freight yards, and had no connection whatsoever with the passenger service which appellant maintained, nor did he have any authority or control over the depot building or the platforms adjacent thereto, but at times did go into the depot for the purpose of making out his reports. At the time of the wordy altercation Cornelius had nothing in his hands whatsoever, but had a book under his arm, presumably some record kept by him in the freight yards.

This is an action by Lindsay against the railroad company for $5,000.00 in damages because of the abusive and insulting language and threats against him by appellant's servant, Cornelius, and on the trial he recovered a verdict for $250.00, from a judgment on which this appeal is prosecuted.

Having reached the conclusion that under the rules of law in this state there can be no recovery, we will con-

fine ourselves to consideration of whether the directed verdict asked for by defendant should have been given.

The question of liability by carriers to passengers for assaults or insults by its employees, other passengers, or licensees, whether occurring upon its trains during actual transportation, or in its depots or waiting rooms or platforms preliminary to such transportation, or immediately thereafter, has been a fruitful source of litigation, and has brought forth from many courts in America and elsewhere many conflicting views. Some conception of these conflicting opinions throughout America and the rest of the world may be gathered from the ninety page note to some cases reported in 40 L. R. A. (N. S.) at page 999; but within reasonable limits this opinion cannot go into or analyze the conflicting views enunciated by the many courts throughout the world. On the contrary we shall confine our consideration to such rules as have been laid down by this court and undertake to show that this opinion is in harmony with them.

In the case of Tate v. I. C. R. R. Co., 26 R. 309, one involving insult to and assault upon a passenger while waiting at a station for a train, by a section boss of defendant, this court accurately pointed out the distinction between the character of duty owed by one actually in process of transportation on the carrier's cars and one who was only in the preliminary sense a passenger, and at its depot awaiting a train. It reads:

> "It will be observed in the cases quoted from that the complaining passengers were upon the cars being transported, and were almost wholly under the care, control and protection of those in charge of the train, and, therefore, there was an implied obligation upon the part of those in charge of the train to exercise the highest degree of diligence to transport them safely. With respect to passengers in the depots, the circumstances are different. They are not so completely under the power and control, and to the same extent helpless to protect themselves as when upon the cars, yet the same implied obligations on the part of those in charge of the depot, to protect them from insult and injury, exists, but not to the same degree or extent. Ordinary care is sufficient in such a state of case."

Under the rule there stated in a case similar to this where a section boss of the carrier not only abused and reviled the waiting passenger, but actually assaulted him, the court held that the carrier owed only ordinary care to its waiting passenger to protect him from insult and assault even by its section foreman.

The recent case of Payne, Agent v. Moore, 196 Ky. 454, deals with an action by a passenger against a carrier for insult and personal injury inflicted by another passenger while they were on the train, and this court stated the rule to be that while carriers are not insurers of the absolute safety of their passengers, or of their entire immunity from the misconduct of fellow passengers, there is an implied obligation growing out of the contract between the parties that the carrier shall afford to the passenger reasonable protection and immunity from insults, violence and wanton interference of fellow passengers, intruders, or the carriers' servants, and then proceeds:

"Out of this obligation and the doctrine that carriers of passengers are required to use the utmost care in the management of their trains in order to prevent or avoid injury to their passengers, arises the rule that makes it the duty of carriers to exercise the highest practicable degree of care and diligence in protecting and guarding their passengers from violence and assaults from whatever source, which may be reasonably anticipated or naturally expected to occur under the circumstances of the case and the condition of the parties; and where a passenger is injured because of the carrier's failure to perform this duty, the carrier is responsible. Kinney v. Louisville & N. R. Co., 99 Ky. 59, 34 S. W. 1066; Louisville Railway Co. v. Wellington, 137 Ky. 719, 126 S. W. 370, 128 S. W. 1077. But if the passenger has been assaulted by a fellow passenger under circumstances that could not have been reasonably anticipated by the carrier in time to prevent the assault, the carrier is not liable. 4 R. C. L. 1186; Louisville R. Co. v. Brewer, 147 Ky. 166, 143 S. W. 1014, Ann. Cas. 1913D 151, 39 L. R. A. (N. S.) 647. In the case at bar it was not shown that the assault was committed in the presence of the conductor or brakeman or any other employe."

The rule there laid down is in accord with that previously announced in several cases in this state, and appears to be that even on a railroad train where the carrier owes to its passenger the utmost care to guard him from violence and assault from any source, yet where there is a sudden and unexpected assault upon one passenger by another which could not have been foreseen and prevented by those in charge of the train, there is no liability upon the carrier.

We likewise have in this state a line of cases holding that the master is not liable for the unauthorized act of his servant if the servant be not at the time acting for the master, or charged by the master with the authority to act for him in the matter under investigation. In the case of Sullivan v. L. & N. R. R. Co., 115 Ky. 447, in elucidating this principle and holding the master not liable for the servant's unauthorized act, this court said:

"But where the servant steps aside from his employment and assumes to act, and does act, solely on his own account, in a matter which the master has no more connection with than if he were the most complete stranger, it would not be logical or fair to make the master vicariously suffer for it. For in doing that act the servant, so called, was absolutely his own master. Cousins v. Hannibal, etc., R. R. Co., 66 Mo. 572. Or, as it was expressed by Mitchell, J., in Morier v. St. Paul, etc., R. R. Co., 31 Minn. 351, 17 N. W. 952, 47 Am. Rep. 793 (quoted with approval in Davis v. Houghtellin, 33 Neb. 582, 50 N. W. 765, 14 L. R. A. 737): 'In determining whether a particular act is done in the course of the servant's employment, it is proper to inquire whether the servant was at the time engaged in serving his master. If the act be done while the servant is at liberty from the service, and pursuing his own ends exclusively, the master is not responsible. If the servant was, at the time the injury was inflicted, acting for himself and as his own master pro tempore, the master is not liable. If the servant step aside from his master's business, for however short a time, to do an act not connected with such business, the relation of master and servant is for the time suspended.' "

The statement of that rule was thereafter quoted and approved in Case v. Steel Coal Co., 162 Ky. 68, and Brooks v. Gray-VonAllmen Co., 211 Ky. 462.

Keeping in mind, therefore, that appellant only owed to appellee while on its platform awaiting a train the duty to exercise ordinary care to protect him from insult and assault, and keeping in mind that Cornelius, when he accosted and insulted appellee, was acting wholly upon his own personal responsibility and about a particularly personal matter with which his employer had nothing to do, and that he had for the time stepped aside in his pursuit of the carrier's business, and voluntarily assumed a status wholly distinct from such employment, in the light of these opinions and of the evidence that no employee of appellant in authority about the depot, or, in fact, any employee so far as the record shows except Cornelius, was present, how in sound reason and the common sense application of the rules of human conduct, can it be said that the carrier is to be held liable for the personal conduct of one of its subordinate employees on its platform, when that employee was acting wholly outside of any conception of his employment, and upon a purely personal matter, and at a time when no superior employee of appellant was present to remonstrate with or restrain him from offering insult or committing assault?

Obviously, if on a railroad train, where the highest duty is imposed upon the train operatives to protect a passenger from insult or assault, the carrier is not liable where there is a sudden and unexpected assault by one passenger upon another, where only ordinary care to prevent such insult or assault is required, the carrier should not be held liable for the conduct of a subordinate employee acting wholly apart from his employment, and in the pursuit of his own personal grievance, at a time when no employee in authority is present to restrain him, or had notice of his purpose.

An analysis of Tate v. I. C. R. R. Co., 26 R. 309, seems to be in accord with this view. There a section boss of the carrier cursed, abused and assaulted one of its passengers while in its waiting room awaiting a train. The court held the carrier only to the exercise of ordinary care to prevent such conduct by its section boss, and imposed that degree of care only because the depot agent, one in authority, was in hearing of the abusive and insulting language used by the section boss, and did not in-

terfere to protect the passenger. That whole opinion is based upon the theory that there could have been no recovery in that case, except for the fact that the depot agent was within hearing of what occurred and did not interpose any objection, or remonstrate against the language of the section boss, or protect the passenger from his insult and abuse.

In this case there is no evidence that any such employee of appellant was present, or that there had been any such conduct by Cornelius as could have been reasonably interpreted by any employee to show a previous purpose on his part to assault or insult appellee.

The sound reason, logic, and common sense, of these Kentucky cases, in the light of modern transportation conditions, is not to be denied, and in accordance with them the trial court erred in not sustaining the motion for a directed verdict.

The motion for appeal is granted, and the judgment is reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith.